# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED
2018 MAY 29 AM 10:30

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75610-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| TOMMIE LEE DAVIS, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: May 29, 2018 |
| | ) | |
| | ) | |

Cox, J. — Tommie Davis appeals his judgment and sentence following his conviction for unlawful possession of a firearm. He argues that five prior California burglary convictions were neither legally nor factually comparable to burglary in Washington and should not have been included in his offender score at sentencing. We agree.

He also argues that the failure to personally provide him with discovery and his inability to obtain access to the jail library while awaiting trial deprived him of due process and the right to consult with counsel in a meaningful manner. He further claims that he was deprived of effective assistance of counsel in certain respects. He also argues that the trial court abused its discretion by

denying motions for a continuance, substitution of counsel, and a new trial. We reject all of these arguments, except one.

In his statement of additional grounds, Davis claims that the taking of his DNA unconstitutionally compelled him to incriminate himself. He also claims unconstitutional discovery violations. These arguments are unpersuasive and we reject them all.

We affirm in part, reverse in part, and remand for resentencing.

Davis got into a fight one night with Linda Wilson. As tensions rose, Davis drew a handgun. By Wilson's account, he fired the gun at her abdomen. He claimed that the gun fired accidentally when Wilson grabbed at it.

Davis was arrested as he fled the scene. As he fled, he stashed the gun under a parked car, where police retrieved it. Forensic analysis found Davis's DNA on the gun and a ballistic match to the bullet removed from Wilson. But the analysis showed no evidence of Davis's fingerprints on the gun.

The State charged Davis with one count of first-degree assault with a firearm allegation, and one count of first-degree unlawful possession of a firearm. Pretrial, police disclosed to Davis's counsel the lack of Davis's fingerprints on the gun. At trial, Davis testified that he owned the gun in question. Accordingly, he conceded that he was guilty of unlawfully possessing a firearm. The jury found him guilty of this crime but not guilty of first-degree assault.

Davis then moved pro se for a new trial based on the State's alleged failure to provide adequate discovery. The trial court denied that motion,

2

concluding that Davis lacked an independent right to discovery because he was represented by counsel through trial.

The trial court duly sentenced Davis. In doing so, the court included in his offender score of eight five prior burglary convictions in California.

This appeal followed.

## COMPARABILITY

Davis argues that the five prior California burglary convictions are neither legally nor factually comparable to Washington burglary and should not have been included in his offender score. We agree.

"The offender score is the sum of points accrued as a result of prior convictions."[1] Out-of-state convictions count towards that score if the trial court determines them to be comparable.[2] The State bears the burden to show that out-of-state convictions exist and are comparable.[3]

The comparability analysis has two steps, one legal, and the other factual. At the legal step, the trial court "compare[s] the elements of the out-of-state conviction to the relevant Washington crime."[4] The conviction counts if its statutory definition "is identical to or narrower than the Washington statute and thus contains all the most serious elements of the Washington statute."[5] The

---

[1] State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

[2] Id.

[3] Id.

[4] Id.

[5] Id. at 473.

3

foreign statute establishing the offense carries with it the construction placed upon it by the other jurisdiction's controlling court.[6]

If the statutory definition of the relevant conviction is broader than its Washington equivalent, then the trial court proceeds to the factual step.[7] It determines whether the conduct underlying the out-of-state conviction would have violated the comparable Washington statute.[8] In making this determination, the trial court considers "only facts that were admitted, stipulated to, or proved beyond a reasonable doubt."[9]

Thus, the court cannot consider "'[f]acts or allegations contained in the record, if not directly related to the elements of the charged crime, [which] may not have been sufficiently proven in the trial.'"[10] Accordingly, for example, the court cannot consider factual allegations in an indictment that were not tested and proven in trial.[11]

This court reviews de novo the trial court's comparability analyses in calculating a defendant's offender score.[12]

---

[6] See State v. Carroll, 81 Wn.2d 95, 109, 500 P.2d 115 (1972).

[7] Olsen, 180 Wn.2d at 478.

[8] Id.

[9] Id.

[10] In re Pers. Restraint of Lavery, 154 Wn.2d 249, 255, 111 P.3d 837 (2005) (quoting State v. Morley, 134 Wn.2d 588, 606, 952 P.2d 167 (1998)).

[11] Olsen, 180 Wn.2d at 475-76.

[12] Id. at 472.

*Legal Prong*

The first step in our analysis is to determine whether burglary in California is legally comparable to burglary in Washington. They are not legally comparable.

RCW 9A.52.030(1) defines burglary in the second degree in Washington as follows:

> A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she *enters* or remains *unlawfully* in a *building* other than a vehicle or a dwelling.

Burglary in California is defined by Cal. Penal Code § 459, in relevant part, as follows:

> Every person who *enters* any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel . . . *or mine or any underground portion thereof*, with intent to commit grand or petit larceny or any felony is guilty of burglary.

A straightforward reading of the plain words of the two statutes shows that they are not legally comparable. First, the Washington burglary statute requires proof that the "entry" itself must be independently "unlawful."[13] In contrast, the plain words of the California statute only require an "ent[ry]." The words of the statute do not require that the entry itself be independently unlawful.

Second, the Washington second degree burglary statute is confined to entry of "buildings," as that term is used in Washington. In contrast, § 459 has a

---

[13] State v. Thomas, 135 Wn. App. 474, 486, 144 P.3d 1178 (2006).

broader scope. For example, it includes "mine[s] or any underground portion thereof." This is beyond the scope of "buildings," as used in Washington.

The State concedes in its briefing that the scope of the California statute is broader than that of Washington. But it does so solely on the basis that the California statute does not confine its scope to "buildings," as does Washington's burglary statute.[14]

The State further argues that the California statute "[i]mposes [a] [c]ommon [l]aw [r]equirement [o]f [u]nlawful [e]ntry."[15] Because this is not supported by a close reading of relevant authorities, we disagree.

We are guided in our analysis of whether "unlawful entry" is an element of § 459 by the decision of the United States Supreme Court in Descamps v. United States.[16] There, the Court considered whether Michael Descamps's prior California convictions for burglary and other crimes could be used to enhance his sentence under the Armed Career Criminal Act (ACCA). He argued that the burglary convictions could not count under federal law. As in this case, he had pleaded guilty to violating § 459.

He also argued that the text of § 459 broadly states the elements of burglary in California by providing that "'a person who enters' certain locations 'with intent to commit grand or petit larceny or any felony is guilty of burglary.'"[17]

---

[14] Brief of Respondent at 9.

[15] Id. at 8-9.

[16] 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013).

[17] Id. at 258-59 (quoting Cal. Penal Code § 459).

Citing its earlier decision in Taylor v. United States, the Court started its analysis of whether a prior conviction for burglary could be used to enhance an ACCA sentence:

> But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form. The key, we emphasized, is elements, not facts. So, for example, we held that a defendant can receive an ACCA enhancement for burglary only if he was convicted of a crime having 'the basic elements' of generic burglary—i.e., '*unlawful* or unprivileged *entry* into, or remaining in, a building or structure, with intent to commit a crime.' And indeed, we indicated that the very statute at issue here, § 459, does not fit that bill because "California defines 'burglary' so broadly as to include shoplifting.'[18]

Had the Supreme Court viewed § 459 to include "unlawful entry," it would have said so. But it concluded that the scope of the statute exceeded the scope of what it called "generic burglary—i.e., *unlawful* or unprivileged *entry*" into a building with the requisite intent to commit a crime.

Applying this principle to the statutes before us, the Washington burglary statute encompasses what the Supreme Court calls "generic burglary" because it requires unlawful entry as an independent element. The California burglary statute, on the other hand, does not require unlawful entry as an element. It is broader. For example, as the Descamps court observed, it includes shoplifting. The two statutes do not have comparable legal elements.

---

[18] Id. at 261 (quoting Taylor v. United States, 495 U.S. 575, 591, 599, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990)) (emphasis added).

The State principally relies on People v. Davis,[19] a California Supreme Court case, to support its argument that the crime of burglary in California includes the element of unlawful entry. That reliance is misplaced.

There, Michael Wayne Davis was convicted of burglary and other crimes.[20] He had presented a forged check to the teller at a check-cashing business by placing a check at a chute in a walk-up window.[21] On appeal, he challenged the sufficiency of the evidence to convict him of burglary because his use of the chute at a check cashing walk-up window could not reasonably be termed an entry into a building for purposes of § 459.[22]

The focus of the California Supreme Court's analysis was the word "entry," which is not defined by statute. The court ultimately held that the placement of a forged check in the chute of a walk-up window of the check cashing facility did not constitute "entry" for purposes of the statute.[23]

In reaching its conclusion, the court surveyed a number of California cases. It cited a prior case that had stated that "[t]he crime of burglary consists of an act-unlawful entry-accompanied by the 'intent to commit grand or petit

---

[19] 18 Cal. 4th 712, 958 P.2d 1083 (1998).

[20] Id. at 714.

[21] Id.

[22] Id. at 715.

[23] Id. at 724.

larceny or any felony.'"[24] Other than quoting § 459, that case did not explain why this is so. And it made no mention of the State's argument in the case before us, that this statute incorporates the common law element of unlawful entry.

In any event, we do not read this statement regarding unlawful entry in Davis as the holding in that case. The word "unlawful" does not appear to have been at issue there. So, we are unpersuaded by the State's argument here that the California statute incorporates the common law element of unlawful entry.

Likewise, we are unpersuaded by the State's argument that the use of the word "unlawful" in the California charging documents in the record before us illustrates that § 459 incorporates this common law element. Why the charging documents before us include that language is unexplained in the record. We will not speculate why the documents include this usage.

For these reasons, we hold that § 459 is not legally comparable to the Washington second degree burglary statute, RCW 9A.52.030(1). Unlawful entry is not an element of that statute. And the statute is legally broader than Washington's burglary statute because it includes entry into places beyond the scope of "building," as that term is used in Washington's burglary statute.

*Factual Prong*

Davis next argues that the State fails to meet its burden to show that the factual prong of comparability analysis is satisfied. We agree.

---

[24] People v. Montoya, 7 Cal. 4th 1027, 1041, 874 P.2d 903 (1994) (quoting Cal. Penal Code § 459).

Again, we are guided in our analysis by the United States Supreme Court's decision in Descamps.[25] In State v. Olsen, our state supreme court concluded that the federal framework of analysis for analyzing foreign convictions under the ACCA, as discussed in Descamps, "is consistent with the [In re Personal Restraint of] Lavery framework, which limits our consideration of facts that might have supported a prior conviction to only those facts that were clearly charged and then clearly proved beyond a reasonable doubt to a jury or admitted by the defendant."[26] Underlying the analysis of prior convictions in these two cases is the Constitutional protection that "judicial determinations will not usurp the role of the jury in violation of the Sixth Amendment," as explained by Apprendi v. New Jersey and its progeny.[27]

In Descamps, the Supreme Court stated:

> [The dispute] involves a simple discrepancy between generic burglary and the crime established in § 459. The former requires an unlawful entry along the lines of breaking and entering. The latter does not, and indeed covers simple shoplifting, as even the Government acknowledges. In Taylor's words, then, § 459 'define[s]' burglary more broadly' than the generic offense. And because that is true—because California, to get a conviction, need not prove that Descamps broke and entered—a § 459 violation cannot serve as an ACCA predicate. *Whether Descamps did*

---

[25] 570 U.S. 254.

[26] 180 Wn.2d 468, 476, 325 P.3d 187 (2014); see In re Pers. Restraint of Lavery, 154 Wn.2d 249, 111 P.3d 837 (2005).

[27] Id. at 477; see also Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

*break and enter makes no difference. And likewise, whether he ever admitted to breaking and entering is irrelevant.*[28]

The question here is whether the State has met its burden to prove that the five prior convictions for burglary under § 459 are factually comparable to burglary in Washington, given that they are not legally comparable.

In State v. Thomas, this court performed a factual comparability analysis to determine whether prior California burglary convictions under § 459 were comparable to Washington burglary.[29] There, the State conceded that § 459 is not legally comparable to Washington burglary.[30] But the State urged that the record in that case showed that the charging documents, judgments, and the clerk's notation of the jury verdict established that Thomas had admitted that he entered a Sears store "unlawfully."[31]

In analyzing for factual comparability, this court stated:

> The key inquiry is whether, under the Washington statute, the defendant could have been convicted if the same acts were committed in Washington. While the sentencing court can examine the indictment or information as evidence of the underlying conduct, *the elements of the crime remain the focus of the analysis. The court in Lavery cautioned against reliance on allegations that are unrelated to the elements of the crime.*[32]

Quoting Lavery, this court further stated that:

---

[28] 570 U.S. at 264-65 (quoting Taylor, 495 U.S. at 599) (internal citations omitted) (emphasis added).

[29] 135 Wn. App. 474, 483, 144 P.3d 1178 (2006).

[30] Id.

[31] Id.

[32] Id. at 485 (emphasis added).

11

'[w]hile it may be necessary to look into the record of the foreign conviction to determine its comparability to a Washington offense, *the elements of the charged crime must remain the cornerstone of the comparison. Facts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial.*'[33]

This court also noted that where "*the elements of the foreign crime are broader, there may be no incentive for a defendant to prove that he is guilty of more narrow conduct.*"[34]

With these principles in mind, we examine this record to see if the State met its burden of proof to show factual comparability.

Davis' March 6, 1996 burglary in California is the first on which the State relies. It is evidenced by the Felony Complaint dated March 7, 1996, that alleges, in relevant part, in Count 1:

On or about March 6, 1996, in the County of Los Angeles, the crime of SECOND DEGREE COMMERCIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by TOMMIE LEE DAVIS, who did willfully and *unlawfully enter* a commercial building occupied by JOHN'S FOOD MARKET with the intent to commit larceny and any felony.[35]

This record also reflects that Davis eventually pleaded guilty to Count 1 of this Felony Complaint.[36]

---

[33] Id. (quoting Lavery, 154 Wn.2d at 255) (internal quotations omitted) (emphasis added).

[34] Id. (quoting Lavery, 154 Wn.2d at 258) (emphasis added).

[35] Clerk's Papers at 173 (emphasis added).

[36] Id. at 177, 179.

His April 10, 1993 burglary is the second on which the State relies. It is evidenced by the Felony Complaint dated April 13, 1993, that alleges facts that largely parallel those quoted above, except for the date and place of the *"unlawful"* entry.[37] This record also contains a plea form, evidencing that Davis pleaded guilty "to the [§ 459 burglary] offense(s) charged in [the felony] complaint."[38]

Davis's October 2, 1991 burglary is the third on which the State relies. It is evidenced by the Felony Complaint dated October 3, 1991 that alleges facts that largely parallel those quoted above, with the same exceptions as to date and place of the *"unlawful"* entry.[39] This record also contains a plea form, evidencing that Davis pleaded guilty "to the [§ 459 burglary] offense(s) charged in [the felony] complaint."[40]

His August 30, 1989 burglary is the fourth on which the State relies. It is evidenced by the Felony Complaint dated September 1, 1989, that alleges facts that largely parallel those quoted above, except as to the date and place of the *"unlawful"* entry.[41] This record also contains a plea form showing that Davis

---

[37] Id. at 182 (emphasis added).

[38] Id. at 233.

[39] Id. at 187 (emphasis added).

[40] Id. at 191.

[41] Id. at 198 (emphasis added).

pleaded guilty "to the [§ 459 burglary] offense(s) charged in [the felony] complaint."[42]

The February 6, 1988 burglary is the final one on which the State relies. It is evidenced by the Felony Complaint dated February 9, 1996, that alleges facts that largely parallel the prior quotation, except as to the date and place of the *"unlawful"* entry.[43] This record also contains a plea form together with a transcript of a hearing in open court in which Davis pleaded guilty to the charge of "commercial burglary in violation of Penal Code Section 459, a felony."[44]

These burglaries fall short of the proof required to show that they should be included in Davis's offender score. First, as Descamps, Lavery, and Thomas stress, the elements of the foreign crime remain the focus of any factual inquiry when performing a factual comparability analysis. Thus, facts untethered from the elements of the charged crime to which a defendant later pleads guilty are not within this focus. That is because permitting such facts to support use of a prior conviction runs the risk of violating the Sixth Amendment protections discussed in Apprendi and its progeny.

Second, as we already discussed in this opinion, § 459 does not include an *"unlawful* entry" element, as does Washington's burglary statute. The California statute is much broader, as the Supreme Court expressly determined in Descamps. This court reached the same conclusion in Thomas.

---

[42] Id. at 202.

[43] Id. at 209 (emphasis added).

[44] Id. at 220.

Third, the consequence of these principles is that it is irrelevant whether Davis pleaded guilty to "*unlawful* entry," as alleged in the California felony complaints in this record. As Descamps stated, that is irrelevant for purposes of sentencing enhancement under the ACCA. We see no reason to reach a different conclusion under our state comparability analysis.

The State makes two arguments in support of including these burglary convictions in the offender score. Neither is convincing and we reject them both.

In its briefing on appeal, the State argues that § 459 incorporates the "unlawful entry" of common law burglary. If this were correct, then Davis's plea that followed would not run afoul of the principles this court stated in Thomas, quoting Lavery. But we already discussed and rejected in this opinion why "unlawful" entry is not an element of § 459. Thus, inquiry into facts in the felony complaints that are not tied to that statute's elements is improper.

At oral argument, the State advanced another argument. As we understand it, the State took the position that even if "unlawful entry" is not an element of § 459, use of the prior convictions in his offender score is still permissible because he admitted "unlawful entry" by his plea. We disagree.

In support of this argument, the State appears to selectively rely on language from Olsen and other supreme court cases that states when a prior conviction may be used for enhancement. Courts are limited to "consideration of facts that might have supported a prior conviction to only those facts that were

clearly charged and then clearly proved beyond a reasonable doubt to a jury or ***admitted by the defendant.***"[45]

We say "selectively" because this statement of principle does appear, on its face, to permit use of any facts "admitted by the defendant." But this statement omits qualifying language in Lavery that in performing this factual inquiry:

> 'the elements of the charged crime must remain the cornerstone of the comparison. ***Facts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial.***'[46]

Thus, as we stated in Thomas, "***the elements of the crime remain the focus of the analysis.***"[47] This court noted that "[t]he court in Lavery cautioned against reliance on allegations that are unrelated to the elements of the crime."[48]

Only when one applies these limitations in considering the factual prong of the comparability analysis does one reach a constitutionally permissible result. As Lavery, Thomas, and Descamps make clear, facts in a charging document that are untethered to the elements of a crime are outside the proper scope of what courts may consider in the factual prong of analysis.

Moreover, as Lavery and Thomas make clear, allowing the use of such facts is also inappropriate because a defendant charged with a broader foreign

---

[45] Olsen, 180 Wn.2d at 476 (emphasis added).

[46] Lavery, 154 Wn.2d at 255 (quoting Morley, 134 Wn.2d at 606) (emphasis added).

[47] 135 Wn. App. at 485 (emphasis added).

[48] Id.

offense may not have an incentive to prove that he is guilty of narrower conduct covered by a Washington statute.[49]

For these reasons, we reject this argument as well.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Davis argues that he received ineffective assistance of counsel in several respects. We agree with one claim, but reject the other.

The Sixth Amendment to the federal constitution guarantees a criminal defendant's right not only to counsel, but to counsel whose assistance is effective.[50] The Washington Constitution provides an analogous right in article 1, section 22.[51] The United States Supreme Court explained in Strickland v. Washington that the benchmark of this right is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[52]

The defendant demonstrates the ineffectiveness of his counsel by meeting a two-part burden. He must first show that counsel's performance was unreasonably ineffective and, second, that such ineffectiveness prejudiced the

---

[49] Lavery, 154 Wn.2d at 257; Thomas, 135 Wn. App. at 485.

[50] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[51] State v. Quy Dinh Nguyen, 179 Wn. App. 271, 287, 319 P.3d 53 (2013).

[52] 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

results of his case.[53] Because he must meet both elements, the court need not address both if either is found wanting.[54]

The supreme court has held that failure to object to an improper comparability analysis is ineffective assistance of counsel.[55] Prejudice is self-evident as it increases the defendant's offender score. Thus, the only question is whether the trial court would have reached the same result if it had properly conducted the comparability analysis.[56]

Here, the State failed to prove that the California burglary convictions were either legally or factually comparable. Based on this deficient showing, the failure to object constituted ineffective assistance of counsel. The result altered Davis's offender score and thus prejudiced him in sentencing.

Davis next claims his attorney was ineffective for failing to timely provide him with redacted copies of discovery. We disagree with this claim.

CrR 4.7(h)(3) allows defense counsel "to provide a copy of the [discovery] materials to the defendant after making appropriate redactions which are approved by the prosecuting authority or order of the court." Davis provides no authority for the proposition that failure to provide discovery falls below an

---

[53] Id. at 687.

[54] Id. at 697.

[55] State v. Thiefault, 160 Wn.2d 409, 414-17, 158 P.3d 580 (2007).

[56] Id. at 417.

objective standard of reasonableness or prejudiced the result at trial.[57] Thus, we reject this argument.

Davis further argues that defense counsel's conduct in this regard impaired his right "'to aid his attorney.'"[58] The case he cites for that proposition, State v. Hightower, simply fails to state such a rule.[59] So, we also reject this argument.

## CONSULTATION WITH COUNSEL

Davis argues that two barriers unconstitutionally deprived him of the assistance of counsel. These claimed barriers were a lack of reasonable access to the jail law library and lack of timely access to discovery including certain fingerprint results. We disagree.

The federal and state constitutions guarantee the defendant's right to counsel.[60] The right "carries with it a reasonable time for consultation and preparation."[61] The defendant is entitled to an "'opportunity for private and continual discussions'" with counsel through trial.[62]

---

[57] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[58] Appellant's Opening Brief at 30 (quoting State v. Hightower, 36 Wn. App. 536, 543, 676 P.2d 1016 (1984)).

[59] See 36 Wn. App. 536, 543, 676 P.2d 1016 (1984).

[60] State v. Ulestad, 127 Wn. App. 209, 214, 111 P.3d 276 (2005); U.S. CONST. amend. VI; U.S. CONST. amend. XIV; CONST. art. I, § 22.

[61] State v. Hartwig, 36 Wn.2d 598, 601, 219 P.2d 564 (1950).

[62] State v. Hartzog, 96 Wn.2d 383, 402, 635 P.2d 694 (1981).

The State has an obligation to allow pro se defendants "reasonable access to legal materials, paper, writing material, and the like."[63] The form this access takes is flexible and may include appointment of standby counsel instead of law library access.[64] Such flexibility permits the trial court to determine the reasonable scope of necessary access in light of all relevant circumstances.[65] A defendant represented by counsel is not entitled to the same scope of access as he is not entitled to serve as his own "hybrid representation."[66]

Importantly, the federal constitution only protects Davis's right to counsel from state interference.[67] And Davis fails to indicate any authority suggesting that the State constitutional protections reach beyond State action.[68] A defendant's attorney is not a state actor.[69]

Here, Davis was represented by counsel. He reported to the court that jail inmates represented by counsel were allowed only one hour a week at the jail's Westlaw workstations, which was not guaranteed due to the prioritization of access for pro se defendants. The State's duty to ensure reasonable access to

---

[63] State v. Bebb, 108 Wn.2d 515, 524, 740 P.2d 829 (1987).

[64] Id. at 524-25.

[65] State v. Silva, 107 Wn. App. 605, 622-23, 27 P.3d 663 (2001).

[66] Hightower, 36 Wn. App. at 540.

[67] United States v. Morrison, 529 U.S. 598, 621, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000).

[68] See Darkenwald, 183 Wn.2d at 248; RAP 10.3(a)(6).

[69] Vermont v. Brillon, 556 U.S. 81, 91, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009).

20

legal resources for pro se defendants does not extend to defendants represented by counsel. And if standby counsel is an adequate substitute for law library access, than active representation is even more so.

## CONTINUANCE

Davis argues that the trial court abused its discretion in denying him a continuance. We disagree.

The decision whether to grant a continuance lies in the trial court's sound discretion.[70] In reaching this decision, the trial court may consider several factors, including "surprise, diligence, materiality, redundancy, due process, and the maintenance of orderly procedures."[71] A defendant challenging the denial of a continuance must show that the denial prejudiced him.[72]

The trial court has the discretion whether to consider a pro se continuance motion when the defendant is represented by counsel.[73]

This court reviews for abuse of discretion the denial of a continuance.[74]

Here, Davis received several hundreds of pages of discovery on March 16, 2016, and an additional 60 to 70 pages on March 21. He explained to the court that he had struggled to review these extensive materials. He alleged that

---

[70] State v. Eller, 84 Wn.2d 90, 95, 524 P.2d 242 (1974).

[71] Id.

[72] Id.

[73] State v. Bergstrom, 162 Wn.2d 87, 97, 169 P.3d 816 (2007), superseded by statute on other grounds as stated in State v. Cobos, 182 Wn.2d 12, 15, 338 P.3d 283 (2014).

[74] Eller, 84 Wn.2d at 95.

his attorney had inadequately and untimely provided him with these documents, and sought new counsel. The trial court denied that motion. By this point, the jury had been selected and the State had already presented five witnesses.

The trial court did not abuse its discretion here for several reasons. First, no clear motion for continuance was made. Second, even if Davis's expression of frustration over his capacity to review discovery constituted such a motion, the trial court had the discretion whether to consider this pro se motion. Third, regarding the merits of such a putative motion, the trial court could determine, within its discretion, whether the trial had reached such a point that a continuance would be improper.

## NEW TRIAL

Davis argues that the trial court abused its discretion by denying his new trial motion based on the State's failure to provide him timely notice of the firearm fingerprint report. He contends that disclosure to him personally was required and that the State unconstitutionally suppressed the report. He makes the same argument in his Statement of Additional Grounds. We disagree.

Under CrR 7.5(a), a trial court may grant a new trial on motion based on certain enumerated circumstances. These include prosecutor misconduct, procedural irregularity that prevented a fair trial, or a legal error objected to at trial.[75]

---

[75] CrR 7.5(a)(2), (5), (6).

This court reviews for abuse of discretion the trial court's denial of a new trial.[76]

CrR 4.7(a)(1)(iv) requires the State disclose "to the defendant" any expert reports or statements, including scientific tests. Davis interprets this language to require direct disclosure to the defendant rather than to defense counsel. He contrasts this language to that of CrR 4.7(a)(3) requiring disclosure of other material exculpatory information "to defendant's counsel." Additionally, the defendant must show that noncompliance with the discovery rules caused him prejudice.[77]

This court interprets court rules in the same manner as statutes.[78] The plain language governs interpretation unless the language is ambiguous.[79] If the statutory language could be subject to more than one reasonable interpretation, then it is ambiguous.[80] In interpreting ambiguous terms, "a court should take into consideration the meaning naturally attaching to them and that best harmonizes

---

[76] State v. Copeland, 89 Wn. App. 492, 496, 949 P.2d 458 (1998), abrogation on other grounds recognized by State v. Radcliffe, 164 Wn.2d 900, 194 P.3d 250 (2008).

[77] State v. Krenik, 156 Wn. App. 314, 320, 231 P.3d 252 (2010).

[78] Jafar v. Webb, 177 Wn.2d 520, 526, 303 P.3d 1042 (2013).

[79] Parentage of I.A.D., 131 Wn. App. 207, 213, 126 P.3d 79 (2006).

[80] Id.

with the context of the rest of the statute."[81] This court also strives to avoid unlikely or absurd results in its interpretation of statutes.[82]

Applying these canons, CrR 4.7(a)(1)(iv) is most naturally read to require disclosure to the counsel of a represented defendant, or to the defendant himself if proceeding pro se. The language used accounts for these two scenarios. The alternative reading that Davis proposes would create an anomaly requiring the prosecutor to directly communicate with a represented defendant. Davis presents no authority requiring such an absurd and unlikely reading of CrR 4.7(a)(1)(iv).[83]

Additionally, Davis fails to explain how the State prejudiced the result at trial by disclosing discovery to his counsel.[84]

Davis also argues that the State unconstitutionally suppressed evidence. This argument is not persuasive.

Constitutional due process, as interpreted in Brady v. Maryland, requires the State to disclose material exculpatory evidence.[85] To demonstrate a Brady violation, the defendant must show three elements.[86] First, "'[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or

---

[81] Id.

[82] State v. Mannering, 112 Wn. App. 268, 272, 48 P.3d 367 (2002).

[83] See Darkenwald, 183 Wn.2d at 248; RAP 10.3(a)(6).

[84] See Copeland, 89 Wn. App. at 496.

[85] 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[86] State v. Mullen, 171 Wn.2d 881, 895, 259 P.3d 158 (2011).

because it is impeaching.'"[87]  Second, "'that evidence must have been suppressed by the State, either willfully or inadvertently.'"[88]  Third, "'prejudice must have ensued.'"[89]

Here, the parties do not dispute that evidence showing a lack of Davis's fingerprints on the gun would be exculpatory and material.  But Davis cannot make out the second and third necessary elements.

The State did not suppress the fingerprint report.  Davis acknowledges that the State disclosed this evidence to defense counsel on February 26, 2016.  In its pretrial answer to Davis's discovery demand, filed March 9, 2016, the State explained that "[t]he firearm was examined for latent prints, but none were found."  In that document, the State cited to an exhibit that was not transmitted on appeal.  Thus, the report's finding that no fingerprints were found was not suppressed.  There was no Brady violation.

Davis also cannot show prejudice.  From opening statements onward, Davis conceded that he was guilty of unlawful possession of a firearm.  Davis also testified and identified the pistol in evidence as his own, and admitted to firing it in the air.  Thus, the jury was aware that Davis possessed a firearm.  In light of this concession, prejudice would not have resulted from suppression of evidence showing a lack of fingerprints on that firearm.

---

[87] Id. (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

[88] Id. (quoting Strickler, 527 U.S. at 282).

[89] Id. (quoting Strickler, 527 U.S. at 282).

## SUBSTITUTION OF COUNSEL

Davis argues that the trial court abused its discretion by denying his motion to substitute counsel. We disagree.

To warrant substitution of counsel, the defendant must show "good cause, 'such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication.'"[90] Such circumstances must reach the point "'as to prevent presentation of an adequate defense.'"[91]

"A disagreement over defense theories and trial strategy does not by itself constitute an irreconcilable conflict."[92] Defense counsel, not the defendant, has authority to decide which theories and strategies to employ.[93]

"A court learning of a conflict between defendant and counsel has an 'obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction'" sufficient to reach an informed decision.[94]

The trial court can also consider its own evaluation of counsel and the effect on scheduled proceedings.[95]

---

[90] State v. Thompson, 169 Wn. App. 436, 457, 290 P.3d 996 (2012) (quoting State v. Schaller, 143 Wn. App. 258, 267-68, 177 P.3d 1139 (2007)).

[91] Id. at 457 (quoting Schaller, 143 Wn. App. at 268).

[92] Id. at 459.

[93] Id.

[94] Id. at 462 (quoting Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991)).

[95] State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997).

This court reviews for abuse of discretion the trial court's decision not to appoint new counsel.[96]

Here, Davis argues that his relationship with his counsel had sufficiently broken down because of counsel's delays in providing him copies of discovery, lack of adequate consultation, and failure to file certain motions he requested.

He alleged below that counsel had failed to timely provide him discovery and had failed to ask his version of events. Regarding discovery, defense counsel explained that he had believed there was nothing in certain requested call transcripts "that would involve any worthwhile evidence that could be presented in this case."[97] But he had nonetheless provided the requested transcripts.

Additionally, defense counsel put Davis on the stand and elicited his version of events.

The trial court concluded that it did not "see the issue rising to the level of having any type of issue."[98] It denied the motion to remove defense counsel.

After trial, Davis moved pro se for relief from judgment based in part on his counsel's alleged misconduct. In this motion, he alleged that he had requested that his counsel file two motions but counsel refused. Defense counsel's decision was not improper. He, not Davis, had the proper authority to determine trial strategy, including which motions to file.

---

[96] Thompson, 169 Wn. App. at 457.

[97] Report of Proceedings (March 21, 2016) at 48-49.

[98] Id. at 50.

## CUMULATIVE ERROR

Davis further argues that reversal of his convictions is required under the cumulative error doctrine. We disagree.

Under the cumulative error doctrine, a conviction must be reversed where the cumulative effect of multiple preserved and unpreserved errors below deprived the defendant of a fair trial.[99]

As discussed above, there were no errors at trial in reaching conviction. The only errors concern the sentencing phase of this case. Thus, the cumulative error doctrine does not require reversal of the underlying conviction.

## STATEMENT OF ADDITONAL GROUNDS

Citing RCW 43.43.754, Davis claims that the State unconstitutionally obtained pretrial DNA evidence from his cheek swab that was used at trial. He further claims his counsel failed to object to the taking of this evidence. And he finally claims that he was not personally provided with discovery and the charging document at issue in this case. These claims are without merit and we reject them.

His challenge to RCW 43.43.754 is misplaced. It provides in relevant part that "[a] biological sample must be collected for purposes of DNA identification analysis from . . . [e]very adult or juvenile individual *convicted* of a felony."[100] At the time the State moved for the swab, he was not then convicted.

---

[99] State v. Russell, 125 Wn.2d 24, 93, 882 P.2d 747 (1994).

[100] (Emphasis added.)

In any event, his constitutional claim is based on article 1 section 9 of the Washington Constitution. It provides that "[n]o person shall be compelled in any criminal case to give evidence against himself." But this "protects an accused only from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature."[101] "That compulsion which makes an accused the source of real or physical evidence does not violate the privilege."[102] The cheek swab does not offend this constitutional provision.

Davis claim that his counsel failed to object to the taking of the swab is unsupported by the record. His counsel did object, but that objection was unsuccessful.

Finally, Davis fails to show any other constitutional violation in this case. Our search of this record reveals none.

We affirm the conviction, vacate the sentence, and remand for resentencing.

_Cox, J._

WE CONCUR:

_Spearman, J._          _Leach, J._

---

[101] State v. West, 70 Wn.2d 751, 752, 424 P.2d 1014 (1967).

[102] Id.