# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. BRADLEY MICHAEL MARTIN, Appellant | No. 77908-7-I DIVISION ONE UNPUBLISHED OPINION FILED: December 16, 2019 |

APPELWICK, C.J. — Martin appeals his burglary conviction, his sentence, and the imposition of certain LFOs. He argues that the State presented insufficient evidence that he was an accomplice to the burglary. He further argues that the trial court impermissibly commented on the evidence in the accomplice liability jury instruction. He argues that the State committed prosecutorial misconduct by mischaracterizing the law and shifting the burden of proof during closing argument. He also argues that he received ineffective assistance of counsel because his lawyer improperly included three foreign convictions in calculating his offender score. Last, he argues that the trial court erred in ordering him to pay a DNA fee, criminal filing fee, victim assessment fee, and interest on those fees. We affirm his conviction and sentence, but remand to the trial court to: strike the DNA fee, criminal filing fee, and interest on the LFOs and to add language indicating the victim assessment fee may not be enforced against his SSI income.

FACTS

At 4:00 a.m. on April 28, 2016, a motion detector in Janet Anderson's driveway alerted her neighbor, Douglas Dahl, to movement on the property. Dahl went to investigate the disturbance. He heard what he believed to be the sound of items being put in the bed of a truck. Upon hearing this, he retreated to his property to call 911 and report a burglary in progress. After the call, Dahl again moved close to Anderson's property. After about five minutes, Dahl witnessed a truck exiting Anderson's property. He was unable to see the license plate, but was able to get to his car and pursue the truck. He caught up with the truck about 900 feet down the street. It had been pulled over by sheriff's deputies.

Sheriff's deputies discovered three people in the truck: Trevor Bush, Bradley Martin, and Gabriel Vogan. Bush was driving the truck. Vogan was in the passenger seat. Martin was sitting in the back seat behind Vogan, at an angle facing towards the driver seat.

Police recovered a flashlight from Bush. They recovered a headlamp from the driver's seat. And, they recovered a headlamp from Vogan. There were gloves and other equipment in the cab of the truck. There was a pair of gloves in the center console. Clothing and multiple pairs of gloves were strewn on the driver's side in the back seat. On the floor on passenger side where Martin had been sitting was a pair of gloves and an asp. An asp is an extendable baton most commonly used as an impact weapon.

The bed of the truck contained several items that Anderson identified as having come from her shop. Anderson had not given anyone permission to take

2

the items from the shop. The items included a rototiller, a saw sharpener, and a box of her son's personal belongings. The rototiller weighed about 250 pounds. The saw sharpener was very tall and had most of the weight distributed at the top. It took multiple sheriff's deputies to lift these machines out of the truck.

Deputy Jacob Navarro took photos of the truck, and impounded it and its contents. A sheriff's deputy also accompanied Anderson to her property and took several photos of the shop where the break-in had occurred. They did not attempt to collect fingerprint or DNA (deoxyribonucleic acid) evidence from the truck or shop. Deputy Jonathan Krajcar testified that they did not believe that usable fingerprints could be gathered from the shop. He further testified that their policy is not to conduct DNA testing for property crimes due to cost.

The State charged Martin with one count of second degree burglary. The State's theory of the case was that Martin was present and ready to assist with the burglary. The State attempted to illustrate this point in closing argument by saying, "Some people should still be held accountable when they're present and they see a crime happen and those people are distinguishable because they are ready to assist by their presence in aiding the commission of the crime."

Also during closing, the prosecutor asserted that conducting DNA testing under these circumstances would not be reasonable. Specifically, she stated, "There wasn't a single expert witness that said that's a reasonable thing to do or that any valuable information could have been gleaned from that. DNA on a glove doesn't put an individual person inside the shop. Nothing could."

3

The to convict instruction listed elements that the jury must find beyond a reasonable doubt in order to return a guilty verdict. The first element stated, "That on or about the 28th day of April, 2016, the defendant or a person to whom the defendant was an accomplice entered or remained unlawfully in a building."

A jury found Martin guilty as charged. The trial court sentenced Martin to 63 months of confinement. This sentence was based on an offender score of 10. The court included three foreign convictions in Martin's offender score. The court also ordered Martin to pay a $500 victim assessment, $200 criminal filing, and $100 DNA fee, despite finding Martin was indigent.

Martin appeals.

## DISCUSSION

Martin raises essentially six issues on appeal. First, he contends that the State failed to present sufficient evidence to support his conviction. Second, he argues that the court impermissibly commented on the evidence in the to convict instruction. Third, he asserts that the prosecutor impermissibly shifted the burden of proof in her closing arguments. Fourth, he contends that the prosecutor impermissibly mischaracterized the law in her closing arguments. Fifth, he asserts that the court improperly calculated his offender score by including three foreign convictions that were not comparable to Washington offenses. Last, he argues that the court should strike all legal financial obligations (LFOs) and interest from his sentence due to his indigency.

I. Sufficiency of the Evidence

Martin argues that the State failed to present sufficient evidence to support his conviction.

Sufficiency of the evidence is a question of constitutional law that this court reviews de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State is required to prove all elements of the charged offense beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted). In reviewing the sufficiency of the evidence, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In conducting this review, circumstantial evidence and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). Specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability. Id.

Conviction for burglary in the second degree requires proof beyond a reasonable doubt that a person entered or remained unlawfully in a building other than a vehicle or a dwelling and that he did so with the intent to commit a crime against a person or property therein. RCW 9A.52.030(1); Apprendi, 530 U.S. at 477. A person is guilty of a crime committed by another if they are an accomplice

5

in the commission of that crime. RCW 9A.08.020(1), (2)(c). Mere presence with knowledge that criminal activity is taking place is insufficient to establish accomplice liability. State v. Truong, 168 Wn. App. 529, 540, 277 P.3d 74 (2012). However, accomplice liability may be established if the defendant is present and ready to assist in the commission of the crime. State v. Rotunno, 95 Wn.2d 931, 933, 631 P.2d 951.

Martin contends that the evidence proves only that he was present in the truck, and therefore cannot support accomplice liability. He dismisses any inference of knowledge or readiness to assist as "pure speculation."

Martin was apprehended at 4:30 a.m. in a truck with stolen property, as the truck was driving away from the scene of the theft. The location was remote and rural. The stolen property was so heavy and large that it required multiple sheriff's deputies to lift it out of the bed of the truck. There was a pair of gloves and a weapon on the floor next to Martin.

The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Martin was present at the robbery and ready to assist. We affirm the jury's verdict.

II. Judicial Comment on the Evidence

Martin contends that the trial court impermissibly commented on the evidence in the "to convict" instruction. We review jury instructions de novo within the context of the jury instructions as a whole. State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Any remark that has the potential effect of suggesting that

6

the jury need not consider an element of an offense could qualify as a judicial comment. Id.

The to convict instruction provided that, in order to convict the defendant, the jury must find certain facts proved beyond a reasonable doubt. The instruction then listed the facts that must be proven:

> (1)   That on or about the 28th day of April, 2016, the defendant or a person to whom the defendant was an accomplice entered or remained unlawfully in a building;
>
> (2)   That the entering or remaining was with the intent to commit a crime of theft against property therein; and
>
> (3)   That the acts occurred in the State of Washington.

(Emphasis added.)

Martin argues that the emphasized language constituted a judicial comment on the evidence because it presupposed that the defendant was an accomplice to whomever committed the burglary. Martin instead urges that the court should have adopted the more common "the defendant or an accomplice" language, rather than "the defendant or a person to whom the defendant was an accomplice." The use of the phrase "the defendant or an accomplice" is an approved, but not required practice. State v. Teal, 117 Wn. App. 831, 838, 73 P.3d 402 (2003).

The jury instruction here did not imply that either Martin or a person to whom he was an accomplice were the perpetrators of the burglary. It simply stated what the jury must find proved beyond a reasonable doubt in order to find Martin guilty. For this reason, we hold that the to convict instruction did not constitute judicial comment on the evidence.

III. Prosecutorial Misconduct

Martin raises two instances of what he claims are prosecutorial misconduct. First, he claims that the State mischaracterized the law of accomplice liability during closing argument. Second, he claims that the State impermissibly shifted the burden of proof by implying he had a duty to present witnesses. Martin did not object to these comments at trial.

When a defendant fails to object to the challenged argument at trial, the claim is waived unless the argument is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Reviewing courts focus less on whether the conduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured. State v. Emery, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

A. Mischaracterization of the Law

Martin first alleges that the State mischaracterized the law of accomplice liability in closing argument. Martin specifically objects to the following language:

> The law in the State of Washington recognizes that somebody could be present and observe a crime happening, but not be an accomplice. And for that reason -- because it would be fundamentally unfair in some circumstances to convict somebody because they see a crime happen. However, the law also recognizes a difference. Some people should still be held accountable when they're present and they see a crime happen and those people are distinguishable because they are ready to assist by their presence in aiding the commission of the crime.

(Emphasis added.)

Martin alleges that this language mischaracterized the law by implying that mere presence plus knowledge is sufficient to establish accomplice liability.

Martin's argument is predicated on taking one half of one sentence in isolation. He seemingly ignores the second half of the sentence: ". . . those people are distinguishable because they are ready to assist by their presence in aiding in the commission of a crime." The full sentence accurately states that a person who is present with knowledge that a crime is occurring <u>and is ready to assist in the commission of the crime</u> may be convicted based on accomplice liability.

Martin urges that a subsequent correct statement of the law is insufficient to cure the original misstatement. That argument is predicated on the idea that the sentence can be split into two separate assertions. The fairest reading of the statement is that it was structured to draw the jury's attention to the critical element of whether or not Martin was ready to assist.

We hold that the State did not mischaracterize the law of accomplice liability.

B.  <u>Shifting the Burden of Proof</u>

Martin next contends that the prosecutor impermissibly shifted the burden of proof in her closing. Specifically, Martin objects to the following language:

> [T]he jury instructions, the to convict instruction, are not a referendum on police work. It's not a policy determination about should they have tried to test the gloves for DNA. <u>There wasn't a single expert witness that said that's a reasonable thing to do or that any valuable information could have been gleaned from that.</u> DNA on a glove doesn't put any individual person inside that shop. Nothing could.

(Emphasis added.)

Martin urges that this language shifted the burden of proof by suggesting that Martin was obligated to call an expert to support his argument. The State counters that it was referring to the two police officers who did testify at trial. Each of these officers testified as to the reasons that DNA and fingerprint testing were not feasible in this case.

However, because Martin did not object at trial, the proper inquiry is whether that error was so flagrant and ill-intentioned that it could not be cured with a jury instruction. Russell, 125 Wn.2d at 86. Had an objection been made, the trial court could have readily told the jury that Martin was under no duty to present evidence, which would have cured any potential prejudice. We therefore hold that Martin waived this objection by failing to raise it at trial.

IV. Martin's Offender Score

Martin next argues that the court improperly calculated his offender score during sentencing. Specifically, he argues that it was improper to include three foreign convictions that were not comparable to Washington offenses. The State counters that Martin's attorney affirmatively acknowledged these convictions in his own calculations of Martin's offender score to the court. Martin disputes this, but argues in the alternative that he received ineffective assistance of counsel to the extent that his attorney failed to object to the inclusion of the foreign convictions.

The defendant has a two-part burden in proving ineffective assistance of counsel: he must show first that counsel's performance was unreasonably ineffective, and second, that such ineffectiveness prejudiced the results of the case. State v. Davis, 3 Wn. App. 2d 763, 783, 418 P.3d 199 (2018). Failure to

object to an improper comparability analysis is ineffective assistance of counsel. Id. This deficiency is prejudicial if it increases the defendant's offender score. Id. Therefore, the proper inquiry for this court is whether the trial court would have reached the same result had it properly conducted the comparability analysis. See id. at 783-84. This court reviews calculation of a defendant's offender score de novo. State v. Olson, 180 Wn.2d 468, 472, 325 P.3d 187 (2014). The State bears the burden of proving the comparability of out-of-state convictions by a preponderance of the evidence. State v. Ford, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). However, foreign convictions may be included without further analysis by the trial court if they are included in the defense's proffered offender score calculation. Id. at 483 n.5.

A. Defense Counsel's Acknowledgment of Foreign Convictions

The State contends that the trial court was not required to do a comparability analysis of the three foreign convictions because Martin's counsel included these convictions in his own offender score calculation. In his sentencing memorandum, defense counsel stated, "Martin has seven prior adult felony convictions. The prior convictions range from 1974-2010. . . . His offender score for the purposes of this case is a seven." In its sentencing order, the court included seven convictions from 1974-2010, including the three foreign convictions at issue here. The State also included seven convictions, including the three foreign convictions, in its sentencing memorandum. The court added additional convictions by hand in its sentencing order. This brought the offender score from 7 to 10.

11

Though defense counsel did not specifically reference the three foreign convictions, his reference to seven convictions from 1974-2010 clearly included these convictions. Both the court and the State identified the seven convictions from that time period as including the three foreign convictions. Defense counsel did not indicate that he was referencing a different set of convictions.

We therefore find that Martin included the three foreign convictions at issue here in his proffered offender score. As a result, the trial court properly included these conviction in calculating Martin's offender score.

B. Ineffective Assistance of Counsel

Martin urges us to find that his attorney's inclusion of the three foreign convictions in his offender score was ineffective assistance of counsel. The court must find ineffective assistance of counsel if defense counsel included foreign convictions in his offender score calculations that were not comparable to Washington offenses. Davis, 3 Wn. App. 2d at 783.

Martin's three foreign convictions were for robbery, possession of cocaine, and felon in possession of a firearm. The State concedes that the inclusion of the three foreign convictions increased Martin's offender score. Our inquiry is therefore limited to whether the inclusion of the foreign convictions was improper. Davis, 3 Wn. App. 2d at 783-84. If so, Martin's attorney's inclusion of these convictions constituted ineffective assistance of counsel. Id.

We engage in a two part inquiry to determine comparability. In re Pers. Restraint of Lavery, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). First, we compare the elements of the crimes. Id. If the elements of the crime are not substantially

similar, we may look to the defendant's conduct, as evidenced by the indictment or information, to determine if the conduct itself would have violated a comparable Washington statute. Id.

### 1. 1974 California Robbery

Martin argues that his 1974 California robbery charge in is not comparable to a Washington felony. He argues that the statutory definition of "fear" utilized in the California statute is broader than its Washington counterpart.

The Washington Supreme Court found the California statute Martin was convicted of violating (California Penal Code (CPC) § 211 (1872)) was comparable to the Washington robbery statute (RCW 9A.56.190 (2011), the current version) in State v. Sublett, 176 Wn.2d 58, 88, 292 P.3d 715 (2012). Martin urges us to find differently, because he claims the 1993 and 1997 versions (former RCW 9A.56.190 (1975)) are different from the 1973 statute (former RCW 9.75.10 (1909)). He does not explain how they are different. The elements compared by the court in Sublett are identical to those of the statute in effect in 1973. Compare RCW 9A.56.190, with former RCW 9.75.10 (1909) (recodified as former RCW 94A.56.190 (1975)). Sublett therefore controls.

Martin urges the court not to apply the holding in Sublett because the court there did not analyze the differences in the statutory definitions of "fear" in California and Washington. Case law requires that the elements of the crime are substantially similar. See Lavery, 154 Wn.2d at 255. It is well established in Washington law that "definitions" are not the same as "elements." See State v. Johnson, 180 Wn.2d 295, 307-08, 325 P.3d 135 (2014) (the requirement that an

13

information contain all "elements" of a crime did not mean that the information must also include statutory definitions). Martin cites no authority for the proposition that an analysis of statutory definitions is also required. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Even considering the definition of "fear" in the context of the elements of the statutes, Washington's definition of "fear" is broader than California's. Both statutes contemplate that the "fear" definition can be satisfied by fear of injury to the person being robbed, a member of the victim's family, or anyone in the victim's company at the time of the robbery. Compare former RCW 9.75.10 (1909), with CPC § 212. In Washington, the harm feared can be of immediate or future injury in all cases. Former RCW 9.75.10 (1909). The California statute requires fear to be immediate if the injury feared is to a person in the victim's company at the time of the robbery. CPC § 212(2). However, it allows fear of injury to the victim or a member of the victim's family to be immediate or future. CPC § 212(1). So, if one caused fear of future injury to a person in the victim's company, that individual could be convicted under the Washington statute, but not the California statute. The California definition is not broader than the Washington definition.

We find the 1974 California robbery conviction comparable to its Washington counterpart.

2. 1999 Federal Convictions

Martin pleaded guilty to two federal crimes in 1999: possession of cocaine, methamphetamine, and marijuana (12 U.S.C. § 844), and felon in possession of a firearm (18 U.S.C. §§ 922(g)(1) and 18 U.S.C. 924(a)(2). He alleges that these two charges are not legally or factually similar to a Washington crime.

He argues first that the federal statute is broader than its Washington counterpart, because it classifies possession of cocaine and methamphetamine as a misdemeanor, as well as possession of marijuana. The comparable Washington statute, on the other hand, classified possession of all other controlled substances as a felony.

The federal statute classified possession of all controlled substances as a misdemeanor for first time offenders. 21 U.S.C. § 844(a). RCW 9.94A.525(3) provides that federal convictions shall be classified according to comparable Washington offense definitions and sentences.[1] So, the federal offense should be classified according to its Washington counterpart: possession of marijuana is a misdemeanor, while possession of other controlled substances is a felony. Former RCW 69.50.401(d)-(e) (1996).

Therefore, Martin argues that the State must prove that Martin pleaded guilty to possession of a substance other than marijuana in order for his crime to

---

[1] An exception applies if there is no comparable Washington offense. RCW 9.94A.525(3). In those cases, the crime is classified as a class C felony so long as it was a felony under federal law. RCW 9.94A.525(3). That exception is not applicable here because the federal crime is a misdemeanor. 21 U.S.C. § 844(a).

15

be considered a felony and counted towards his offender score. He contends that the State has not done so.

The State introduced the judgment for the charge, which listed the nature of the offense as "Possession of Cocaine, Methamphetamine, and Marijuana." The use of the conjunctive "and" rather than the disjunctive "or" indicates that Martin had pleaded guilty to possession of all three substances. The original indictment, which the State provided, also indicates that he was charged with possession of all three substances.

The judgment indicates that Martin pleaded guilty to counts 1 and 4 of the superseding indictment. The State provided only the original indictment. Nevertheless, the use of the word "and" in the judgment combined with the factual allegations in the original indictment are sufficient to prove that Martin was pleading guilty to possession of all three substances. Convictions for cocaine and methamphetamine are federal felonies, comparable to Washington law. The fact that he also possessed marijuana does not alter the conclusion.

Martin also contends that his 1999 conviction for felon in possession of a firearm is not legally or factually comparable to a Washington charge.

The federal charge to which Martin pleaded guilty criminalizes possession of firearms and ammunition. 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(a)(2). The comparable Washington statute criminalizes only possession of a firearm. RCW 9.1.040. The parties agree that because the federal statute is broader, it is not legally comparable.

16

The State nevertheless argues that Martin's conduct is factually comparable to conduct criminalized by RCW 9.41.040(1). It points first to the language describing the nature of the offense in the judgment. The judgment lists the nature of the charge as "[f]elon in possession of a firearm." The State asserts that the use of the word "firearm" rather than "ammunition" indicates that Martin was in fact in possession of a firearm rather than ammunition.

The State further points to the allegations in the original indictment. The original indictment alleges that Martin was in possession of several firearms. As noted above, Martin pleaded guilty to counts in the superseding indictment. The language of the judgment, combined with the factual allegations set forth in the original indictment was sufficient to prove that the superseding indictment did not change the charge and that Martin had pleaded guilty to possession of firearms rather than ammunition.

The three foreign convictions were comparable. We reject Martin's claim of ineffective assistance of counsel.

## V. Legal Financial Obligations

Martin argues last that all LFOs should be stricken from his judgment and sentence. Martin was ordered to pay a $200 criminal filing fee and a $100 biological sample fee. The court also ordered a $500 victim assessment fee. The court further ordered that interest accrue on the LFOs from the date of judgment until paid in full.

The court found Martin indigent. Martin argues that under House Bill 1783[2] and State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018), the criminal filing fee cannot be imposed on indigent defendants. He further contends that the legislature has amended the statute to prohibit imposition of the DNA collection fee on indigent defendants if their DNA has already been collected as a result of a prior conviction. Finally, he argues RCW 10.82.090(1) prohibits interest on nonrestitution LFOs.

Because Martin was found indigent and has already provided a DNA sample, we hold that the criminal filing and DNA collection fees should be stricken. Because RCW 10.82.090(1) prohibits interest on nonrestitution LFOs, the interest provision should be stricken.

Martin also argues that the victim assessment fee should be struck, because his only source of income is Supplemental Security Income (SSI) benefits. He relies on State v. Catling, 2 Wn. App. 2d 819, 826, 413 P.3d 27, reversed on other grounds in part by 191 Wn.2d 1001, 422 3d 915 (2018). At the time Martin filed his brief, the Catling court ordered remand of a victim assessment fee assessed against a defendant whose sole source of income was SSI benefits. Id. The court reasoned that since LFO payments may not be enforced against SSI benefits, the trial court should revise the sentence to indicate that the LFO could not be enforced against any funds subject to 42 U.S.C. § 407(a). Id. However, the court ruled that the anti-attachment provision of the Social Security Act[3] did not

---

[2] ENGROSSED SECOND SUBSTITUTE H.B. 1783, §§ 17(2)(h), 18, 65th Leg., Reg. Sess. (Wash. 2018) (House Bill 1783).
[3] 42 U.S.C. § 407(a).

prevent a court from imposing the fee altogether. Id. Since Martin filed his brief, the Washington Supreme Court has affirmed this reasoning. Catling, 193 Wn.2d at 264.

Martin's financial declaration identified SSI as his sole source of income. Accordingly, we decline to strike the victim assessment fee. But, we remand to amend the judgment and sentence to include language indicating that the victim assessment fee many not be enforced against his SSI income.

We affirm, but remand to the trial court to strike the criminal filing fee, DNA fee, and interest on the nonrestitution LFOs, and to add language indicating that the victim assessment fee may not be enforced against his SSI income.

Appelwick, CJ

WE CONCUR:

Leach, J.                Schindler, J