[No. 13319-5-I.   Division One.   January 23, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL RAY HIGHTOWER III, *Appellant.*

538

*Michael Ray Hightower III*, pro se, and *Tom P. Conom*, for appellant (appointed counsel for appeal).

*Seth Dawson, Prosecuting Attorney*, and *David A. Kurtz* and *James C. Townsend, Deputies*, for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The defendant, Michael Ray Hightower III, appeals the judgment and sentence entered following a jury verdict finding him guilty of first degree assault while armed with a firearm and deadly weapon. RCW 9A.36.010(1)(a); RCW 9.95.040; RCW 9.41.025.

Late on the night of August 11, 1981, as the victim was driving home from work, she noticed a car behind her flashing its lights and trying to pull alongside her automobile. She pulled over to the side of the road to let the other car pass, but the other car also stopped and its driver got out. The driver of the other car walked to the victim's automobile and told her that her car had a gas leak. He was looking directly into the car at her as he spoke. When the victim refused to get out of her car, the defendant pulled a gun and threatened to shoot her.

At this, the victim leaned toward the passenger seat of her automobile, engaged the clutch and put it into first gear. The man yelled, "Don't do that", then shot her in the back. She drove away as fast as she could but was shot twice more in the back. This was as she was holding herself up just high enough to see over the steering wheel to drive. She was blowing the car horn with her left thumb while steering with her left hand. With her right hand she held her side trying to stanch the flow of blood and to assist her breathing. The shots at the victim through her rolled up window caused the glass to shatter and glass particles sprayed about both inside and outside her automobile.

The victim realized she could not make it home so she drove into a driveway, stopped the car, opened the door

and screamed "I've been shot; I'm bleeding to death; somebody please call the medics." No one responded immediately. She then noticed a porch light on at a house, so holding her side, she started toward the house continuing to scream for help. Before she could reach the house she collapsed. Then someone yelled to her from the house that the medics had been called and shortly thereafter some neighbors came to assist.

The victim positively identified the defendant as the man who shot her, first from a photo montage, later in a police lineup and then again at trial.

Two guns and a box of bullets were found and linked to the defendant. A latent fingerprint found on the victim's car was identified as the defendant's print by the State's experts. Both the prosecution and defense presented expert testimony concerning this identification evidence.

Pursuant to a search warrant, dirt samples were taken from the defendant's car. Later, at trial, an FBI expert testified that in his opinion the glass particles found in some of these samples probably came from the victim's car window. Another expert testified that a positive identification of the glass particles could not be made in this instance.

The jury returned a verdict finding the defendant guilty as charged. Direct appeal to the State Supreme Court followed; but the case was transferred by that court to this court for decision.

The defendant's briefs on appeal, including his pro se briefs, present the following principal issues.

### ISSUES

ISSUE ONE. Did the trial court err in denying the defendant's motion to personally participate in the trial as co–counsel?

ISSUE TWO. Did the trial court err when it denied defendant's motion to suppress evidence seized from the defendant's car pursuant to a search warrant?

ISSUE THREE. Did the trial court err by allowing expert testimony concerning identification of the glass fragments

and bullets?

ISSUE FOUR. Did the trial court err in ruling that in the event the defendant took the stand his prior felony convictions would be admissible by way of impeachment?

ISSUE FIVE. Did the trial court err when it denied the defendant's motion for a mistrial based on a statement made by the deputy prosecuting attorney in closing argument?

## DECISION

ISSUE ONE.

CONCLUSION. The defendant in this criminal case had no constitutional right to hybrid representation, *i.e.,* to participate as cocounsel at trial, and the trial court did not abuse its discretion in denying him cocounsel status.

It has long been basic that the defendant in a criminal case has a constitutional right to representation by competent legal counsel. *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963).

In *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), the United States Supreme Court further held that the sixth amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, guarantees a defendant the right to represent himself without legal counsel. *Faretta,* however, left open a host of procedural questions. In *State v. Fritz,* 21 Wn. App. 354, 585 P.2d 173, 98 A.L.R.3d 1 (1978), *review denied,* 92 Wn.2d 1002 (1979), we summarized the generally accepted procedures for implementing and asserting that right in eight basic principles, one of which is that standby counsel could be authorized and appointed to aid the accused.

The case before us involves a different aspect of the matter, namely, a defendant's effort to participate as cocounsel at trial, or, as it is also known, to have hybrid representation.

■ The United States Supreme Court has not held that the sixth amendment to the United States Constitution confers a right of hybrid representation on a defendant.

Prior to *Faretta,* as well as since, the other federal courts which have considered the matter have consistently held that no such right exists under the federal constitution. *United States v. Hill,* 526 F.2d 1019 (10th Cir. 1975), *cert. denied,* 425 U.S. 940, 48 L. Ed. 2d 182, 96 S. Ct. 1676 (1976); *United States v. Bennett,* 539 F.2d 45 (10th Cir.), *cert. denied,* 429 U.S. 925, 50 L. Ed. 2d 293, 97 S. Ct. 327 (1976); *United States v. Halbert,* 640 F.2d 1000 (9th Cir. 1981).

In state courts as well, "[t]he great weight of judicial authority is to the effect that a defendant has no constitutional right to proceed to trial with counsel and to simultaneously actively conduct his own defense." *Moore v. State,* 83 Wis. 2d 285, 299, 265 N.W.2d 540, 545, *cert. denied,* 439 U.S. 956, 58 L. Ed. 2d 348, 99 S. Ct. 356 (1978) (collecting authorities). Moreover, however debatable constitutional provisions of some states may be as to the existence of such a right, there is clearly no constitutional right to hybrid representation in this state where the rights in question are granted in the disjunctive.

In criminal prosecutions the accused shall have the right to appear and defend in person, *or* by counsel, . . . (Italics ours.) Const. art. 1, § 22 (amend. 10). *See State v. Blanchey,* 75 Wn.2d 926, 938, 454 P.2d 841 (1969), *cert. denied,* 396 U.S. 1045 (1970).

"Whether to allow hybrid representation remains within the sound discretion of the trial judge." *Halbert,* at 1009. One court has observed that such representation should not be foreclosed where there is a strong showing of "special need", *Wilson v. State,* 44 Md. App. 318, 408 A.2d 1058, 1065 (1979), *cert. denied,* 287 Md. 758 (1980), and another holds that it should be allowed only where there has been a "substantial showing" that "the cause of justice will thereby be served . . .", *People v. Mattson,* 51 Cal. 2d 777, 797, 336 P.2d 937, 952 (1959).

In discussing the limitations to granting a right of hybrid representation, one court explains that:

the conflicting interests of the accused and society involved in a criminal trial can be served only in an orderly proceeding. The trial judge must therefore have discretion to control the conduct of a trial to maintain dignity, decorum and orderly procedures; to avoid unnecessary delays; and to prevent the disruption of the judicial process by the accused's inept or disorderly self–representation. This approach reflects the fact that no right is more important to the accused and to society than the right to a fair, orderly trial.

*Moore,* at 300. Another court points to the potential problems involved in disagreements and conflict between defendant and counsel in such a situation. *Landers v. State,* 550 S.W.2d 272, 280 (Tex. Crim. App. 1977).

Another obvious factor to be considered before allowing a defendant cocounsel status is the possibility of a victim or witness being intimidated, especially in cases involving crimes of violence such as rape, robbery and assault.

It may also be observed that there are certain obvious tactical benefits to a defendant in this course, none of which relate to the truthfinding function of the law. One is that if a defendant proceeds pro se he cannot thereafter complain of ineffective assistance of counsel, *see Faretta,* 422 U.S. at 835 n.46; whereas if he proceeds as cocounsel, he likely can. *See State v. Barker,* 35 Wn. App. 388, 394–96, 667 P.2d 108 (1983); *Williams v. State,* 549 S.W.2d 183, 189 (Tex. Crim. App. 1977). Another is that the defendant may well be able to use this as a device to present himself and his view of the facts to the jury without subjecting himself to impeachment or cross examination.

For all of the foregoing reasons, and from the dearth of decisions holding that the denial of a defendant's request to serve as cocounsel is an abuse of discretion, it is at once apparent that such requests are not favored in the law. Here, the defendant was charged with a serious assault; he almost succeeded in killing a young woman. The record reflects that, while the defendant showed no signs of mental derangement or incompetency in this case, he had on that basis previously been found not guilty of three violent rapes

in Idaho in the 1970's. There is no suggestion that the defendant was not competently represented at the trial of this case by his court appointed counsel and no showing has been made on appeal that his case was in any way prejudiced by the denial of his motion for leave to personally act as cocounsel in the case. After all, as was observed in a somewhat analogous situation, "[d]efendant, whether formally permitted to appear as co-counsel or not, was in a position to aid his attorney." *State v. Kender,* 21 Wn. App. 622, 625, 587 P.2d 551 (1978), *review denied,* 91 Wn.2d 1017 (1979). So it was here. The trial court did not abuse its discretion or otherwise err in denying the defendant's motion to act as cocounsel in the case.

ISSUE TWO.

CONCLUSION. The affidavit in support of the search warrant, when viewed as a whole and in a nontechnical manner, is nonconclusory and contains sufficient factual information to support the issuance of the search warrant. The search warrant was therefore proper and the trial court did not err in refusing to suppress the evidence obtained as a result of the search conducted pursuant to it.

The defendant contends that the affidavit on which issuance of the search warrant was based is not legally sufficient to support the warrant because it lacked the factual basis necessary to enable the issuing judge to make an independent conclusion of probable cause.[1]

█ It is the duty of the issuing judge to determine whether probable cause exists to issue a warrant, and that determination will be accorded considerable deference by this court. If the affidavit makes an adequate showing which goes beyond suspicion and mere personal belief that evidence of a criminal act will be found in the vehicle to be searched, the warrant will be upheld. *State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981).

---

[1]As the defendant states in his brief, he does "not present a *Franks v. Delaware* [438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)] challenge to the search warrant."

Here, the affidavit requested that the defendant's 1980 Ford Fiesta automobile be searched and included the following facts supportive of that request: (1) the victim had positively identified the defendant as the man who shot her; (2) witnesses had described the assailant's car; (3) the defendant was the owner of a car which could match the description of the assailant's car seen leaving the scene by witnesses; (4) three bullets smashed through the side window of the victim's car; (5) glass fragments were gathered at the scene of the crime and (6) the FBI laboratory had said that "other similar glass fragments could have been transferred from the scene to a suspect's car via shoes". The affiant, a detective, also stated his belief that evidence of the crime, namely glass fragments, would be found in the defendant's automobile.

The foregoing facts must be viewed as a whole and in a nontechnical manner. *State v. Fisher,* 96 Wn.2d 962, 966, 639 P.2d 743, *cert. denied,* 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982). So viewing them, they result in an inference of probable cause to believe that evidence of the crime would be found in the defendant's car, as it was. The showing made to the magistrate was thus sufficient and the magistrate did not abuse his discretion in issuing the search warrant. *State v. Fagundes,* 26 Wn. App. 477, 482, 614 P.2d 198, 625 P.2d 179, *review denied,* 94 Wn.2d 1014 (1980). The nature of the course of the investigation and the nature of the particles sought by the search warrant belie any "staleness" issue. The search undertaken pursuant to the search warrant was valid.

Issue Three.

Conclusion. The trial court did not abuse its discretion in admitting expert testimony concerning comparisons of glass particles and bullets, objected to on appeal, and the unchallenged testimony of the expert witnesses concerning them.

■ "Generally, the failure to object at trial will operate as a waiver of the right to assert that error on appeal. *State v. Fagalde,* 85 Wn.2d 730, 731, 539 P.2d 86 (1975)." *State v.*

*Brush,* 32 Wn. App. 445, 456, 648 P.2d 897 (1982), *review denied,* 98 Wn.2d 1017 (1983). Furthermore, the admission of relevant evidence is "within the sound discretion of the trial court; the court's decision will not be reversed absent manifest abuse of that discretion." *State v. Woolworth,* 30 Wn. App. 901, 906, 639 P.2d 216 (1981). Also, "[t]he admission of expert testimony is within the discretion of the trial court", *State v. Gilcrist,* 15 Wn. App. 892, 893, 552 P.2d 690 (1976), *review denied,* 89 Wn.2d 1004 (1977), and once the basic qualifications of an expert are shown, any claimed deficiencies go to the weight of the testimony rather than its admissibility. *State v. Parker,* 9 Wn. App. 970, 972, 515 P.2d 1307 (1973).

There were differences between the expert testimony presented by the State and that presented by the defendant. Virtually all of the State's testimony in this regard, including the conclusions of its expert witnesses, came in without objection at the time. The very general objections that were ultimately made were not timely and were insufficient to preserve to the defendant the right to reargue that entire aspect of the trial as he now seeks to do. The parties at the trial considered the "battle of experts" to be a factual dispute for the jury to determine, and we likewise so consider it.

ISSUE FOUR.

CONCLUSION. The trial court considered the proper factors and did not abuse its discretion in determining that on balance the probative value of admitting the defendant's prior convictions, as they related to his credibility, outweighed their possible prejudicial effect on the jury.

The defendant contends he was deprived of a meaningful opportunity to testify on his own behalf because the trial court ruled that the State could introduce evidence of two prior felony convictions for the purpose of impeachment in the event he testified.

■ The admissibility of prior convictions for impeachment purposes is governed by ER 609(a). We recently summarized the law in this connection:

Determination of admissibility of evidence for impeachment purposes is a matter within the sound discretion of the trial court. *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981); *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980). The trial court's determination will not be reversed absent a clear showing of abuse of discretion. *State v. Thompson, supra.* In exercising its discretion, the trial court should balance the probative value of the prior conviction as it relates to the credibility of the witness against the potential prejudice to the defendant. *State v. Anderson,* 31 Wn. App. 352, 641 P.2d 728 (1982).

*State v. Gibson,* 32 Wn. App. 217, 220, 646 P.2d 786, *review denied,* 97 Wn.2d 1040 (1982).

ER 609 recognizes that in the proper circumstances felonious acts of violence may have probative value concerning credibility. *State v. Thompson,* 95 Wn.2d 888, 891, 632 P.2d 50 (1981).

The record before us establishes that the trial court properly considered the *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980) factors and balanced the probative value of the defendant's two prior rape convictions against the possible prejudice to the defendant before it ruled, as requested by defendant, that the convictions were admissible, but if so admitted, the nature of the crimes involved would not be identified. *See State v. Friederick,* 34 Wn. App. 537, 543, 663 P.2d 122 (1983). This was not error.

ISSUE FIVE.

CONCLUSION. Considering the record as a whole, and particularly the judge's admonition to the jury that it was to disregard that portion of the deputy prosecuting attorney's final argument which was objected to, the defendant was not prejudiced.

During his closing argument, the deputy prosecuting attorney argued in rebuttal to the defense closing argument[2] as follows:

---

[2] The record provided for our review by the parties does not contain defense counsel's closing argument.

Counsel talks about horrendous mistakes. He says, "Don't make a horrendous mistake in this matter." Ladies and Gentlemen, you can make a horrendous mistake because under the testimony in this case this man hunted down an innocent woman and tried to kill her. And if you are wrong, if you let him go, he will be out there on the street again.

■ Since the trial judge is in the best position to evaluate the potential prejudice of this argument, the claim of error will be reviewed under the abuse of discretion standard. *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983).

A mistrial should be granted only when "nothing the trial court could have said or done would have remedied the harm done to the defendant." [*State v.*] *Swenson*, [62 Wn.2d 259,] at 280 [382 P.2d 614 (1963)]; *State v. Case*, 49 Wn.2d 66, 72, 298 P.2d 500 (1956). In other words, a mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly.

*State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979).

On motion being made by defense counsel, the trial court promptly instructed the jury to disregard these remarks by the deputy prosecuting attorney. Before ruling on the motion for a mistrial, the trial court heard and considered arguments by respective counsel concerning the impact that the argument may have had on the jury and the effect of the court's instruction to disregard. The record supports the trial court's decision that the defendant was not so prejudiced as to deny him a fair trial. *State v. Evans*, 96 Wn.2d 1, 5, 633 P.2d 83 (1981).

The remaining assignments of error are likewise not well taken.

The defendant did not file an affidavit of prejudice against the trial judge who presided over the trial "before the judge presiding has made any order or ruling involving discretion . . ." as required by RCW 4.12.050. Thus, his challenge was not timely and was properly denied. *See State v. Dixon*, 74 Wn.2d 700, 702–03, 446 P.2d 329 (1968);

*In re Hiebert,* 28 Wn. App. 905, 909–10, 627 P.2d 551 (1981).

■ The trial court did not err by allowing rebuttal testimony of a fingerprint expert for the State after a defense fingerprint expert raised new matters in his testimony. Some degree of overlapping with previous state expert testimony did occur, but even at that the trial court's ruling as to what was proper rebuttal was a discretionary ruling, and we conclude there was no manifest abuse thereof. *State v. White,* 74 Wn.2d 386, 395, 444 P.2d 661 (1968).

■ The gratuitous statement by an officer in his testimony that the victim's identification of the defendant "was the most positive I.D. I've ever seen in my life" was objected to and the trial court admonished the jury to disregard it. In view of the detailed identification testimony of this witness at the trial, this was not the kind of remark which could not be cured by an instruction to disregard, *State v. Weber,* 99 Wn.2d 158, 165, 659 P.2d 1102 (1983), and we will presume that the jury followed the instruction, *State v. Costello,* 59 Wn.2d 325, 332, 367 P.2d 816 (1962). Since at the time of sentencing the trial judge also observed that, "the testimony in this case by [the victim] was the most positive, credible and convincing testimony by any complaining witness that I have ever listened to", the convincing nature of the victim's identification testimony was presumably as observable to the jurors as it was to the trial judge, and would be harmless error in any event.

■ The fact that during jury voir dire one of the prospective jurors asked to be excused because she had read that defense counsel in this case was involved in another serious case pending in the same county, does not show as a "demonstrable reality" the "essential unfairness" necessary to require the defendant's conviction to be set aside. *See Beck v. Washington,* 369 U.S. 541, 558, 8 L. Ed. 2d 98, 82 S. Ct. 955, *reh'g denied,* 370 U.S. 965, 8 L. Ed. 2d 834, 82 S. Ct. 1575 (1962). The prospective jurors were all questioned about their exposure to various news reports of defense counsel's involvement in the other case, each out of the

presence of the others, and while four others had seen or heard such reports, each of them said it would not interfere with their decision. The trial court did not err in refusing to grant a mistrial, *see Irvin v. Dowd,* 366 U.S. 717, 722–23, 6 L. Ed. 2d 751, 81 S. Ct. 1639 (1961), particularly since the news report referred to a totally unrelated case and did not involve any suggestion of juror prejudice toward this defendant.

It was not error to refuse to give the defendant's proposed supplemental instruction claimed to have been error since that instruction was essentially duplicitous of uniform instructions given (WPIC 4.11 and 155). *State v. Watkins,* 99 Wn.2d 166, 176, 660 P.2d 1117 (1983).

Nor did the trial court abuse its discretion in denying a new trial on the basis of various of the issues above discussed, and which we have decided did not constitute prejudicial error. *See State v. Williams,* 96 Wn.2d 215, 221, 634 P.2d 868 (1981).

Affirmed.

DURHAM, C.J., and CALLOW, J., concur.

Review denied by Supreme Court April 20, 1984.