IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78752-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TRAVIS CARSONDEAN PENDLEY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. —Travis C. Pendley was charged with theft of a firearm, unlawful possession of a firearm in the first degree, and murder in the second degree with a firearm enhancement. As the case progressed, Pendley repeatedly brought motions to discharge his court-appointed attorneys. His case was pending for 18 months before it was resolved with a plea agreement and contested sentencing hearing. He argues the trial court wrongly denied his motions regarding his representation, that he received ineffective assistance of counsel based on his attorneys' performance related to his sentencing hearing, and that the court improperly imposed a DNA collection fee. We affirm in part as to the rulings on his motions, do not find ineffective assistance of counsel, and reverse as to the imposition of the DNA collection fee.

Citation and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

On July 25, 2016, Travis Pendley was charged with theft of a firearm, unlawful possession of a firearm in the first degree, and murder in the second degree with a firearm enhancement. He was appointed counsel, arraigned on August 11, 2016 and remained in custody awaiting trial for approximately 18 months. The court held numerous hearings as the case was prepared for trial. Pendley consistently objected to continuances and often asserted his right to a speedy trial. Pendley also raised concerns about conflicts with his attorneys, which mainly focused on his desire to have them interview specific witnesses, conduct a psychological evaluation, and increase their contact with him. The court was kept informed as to both parties' preparation for trial, which was expected to last for at least one month.

Pendley filed written motions with the court asserting his right to a speedy trial and to discharge counsel. On one occasion, the trial court specifically asked if Pendley was seeking to pursue his written motions and he declined. In another instance, Pendley's motions to discharge counsel was noted for a formal hearing. The court inquired into the nature of the conflict and Pendley emphasized his attorneys' decision as to defense witnesses and general trial strategy as the points of contention. The court informed Pendley that those choices were within the discretion of the attorneys.

Two other hearings were later held on the same issue. The first was heard by a judge who had little contact with the case and denied Pendley's motion. The judge explained, however, that Pendley could bring the motion again before the

judge who had been actively overseeing the case. When the motion to discharge counsel was brought again before the judge who had been monitoring the case, Pendley raised the same issues as his first hearing. Again, the court denied the motion, explaining that the parties were working to prepare the case for a complex trial and strategic choices about the defense were properly within the attorneys' discretion.

The case was assigned for trial on February 22, 2018, however the parties sought a recess to explore further plea negotiations initiated by Pendley. On February 27, 2018, Pendley entered guilty pleas to murder in the second degree with a firearm enhancement and theft of a firearm. The State dismissed the unlawful possession of a firearm in the first degree charge as part of the plea agreement. His sentencing hearing was set two months out. Two days prior to sentencing, defense counsel moved to continue the sentencing for a month due to their failure to acquire funding for the travel and live testimony of defense expert, Dr. R. Eden Deutsch. Dr. Deutsch had previously conducted a psychological evaluation of Pendley and submitted a written report for the defense.

The court inquired as to why live testimony was necessary. Defense counsel offered that it was needed to supplement the report already submitted to the court and possibly rebut arguments the State may make. The court denied the request for continuance and sentenced Pendley two days later. The defense submitted a presentencing report which included Dr. Deutsch's psychological evaluation of Pendley and analysis of his claim of self-defense.

The State requested the high end of the standard range, 325 months, while the defense requested a low end sentence of 225 months. The court imposed a sentence of 250 months in prison. Pendley timely appealed and seeks to withdraw his guilty plea based on these alleged errors.

ANALYSIS

I.     Effect of Guilty Plea on Waiver of Issues for Appeal

The parties dispute whether the guilty plea waived the issues raised by Pendley. There is authority that entering a guilty plea does not waive issues related to the entry of the plea. The Supreme Court has "held that a guilty plea in Washington does not usually preclude a defendant from raising collateral questions such as the validity of the statute, sufficiency of the information, jurisdiction of the court, or the circumstances in which the plea was made." State v. Majors, 94 Wn.2d 354, 356, 616 P.2d 1237 (1980). The 9th Circuit Court of Appeals addressed a similar argument in U.S. v. Velazquez, wherein the State argued that since the defendant entered a plea, she had waived her right to appeal the court's denial of her motion to substitute counsel. 855 F.3d 1021, 1033 (9th Cir. 2017). The court explained that this argument went to the constructive denial of counsel and may be appealed despite the plea. Id.

Pendley challenges the court's denial of his motions to discharge counsel and to proceed pro se and the sufficiency of his court-appointed representation. He seeks to withdraw his guilty plea as a result. Each of these assignments of error arguably address the circumstances under which Pendley entered his guilty

plea. However, we need not address the waiver issue in detail because even assuming there was no waiver, Pendley does not prevail.

II.      Motions to Discharge Court-Appointed Counsel

Pendley argues that the court erred by not granting his motion to discharge his attorneys when an irreconcilable conflict existed, thereby violating his right to counsel. A person accused of a crime is entitled to the assistance of competent counsel at all stages of the criminal proceeding. Lafler v. Cooper, 566 U.S. 156, 162-63, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). This includes the right to conflict-free counsel to represent the accused. Wheat v. U.S., 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d. 140 (1988). This right to counsel, however, does not entitle the defendant to the particular advocate of their choice, nor does it require that the relationship be free of any conflict. State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997).

"Whether an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel is a matter within the discretion of the trial court." State v. DeWeese, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). We therefore review the trial court's decision for abuse of discretion. State v. Thompson, 169 Wn. App. 436, 457, 290 P.3d 996 (2012).

> A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant . . . . Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense.

Stenson, 132 Wn.2d at 734 (internal citations omitted).

In evaluating a defendant's claim of error in denying the motion to substitute counsel due to irreconcilable conflict, our state courts have adopted the test developed by the Ninth Circuit to determine whether the alleged conflict rises to the level necessitating discharge of counsel. In re Per. Restraint of Stenson, 142 Wn.2d 710, 723-24, 16 P.3d 1 (2001); see United States v. Moore, 159 F.3d 1154, 1158-59 (9th Cir. 1998). "The factors in the test are (1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion." In re Stenson, 142 Wn.2d at 724; accord Moore, 159 F.3d at 1158-59.

In looking to the first factor, we "examine both the extent and nature of the breakdown in communication between attorney and client and the breakdown's effect on the representation the client actually receives." In re Stenson, 142 Wn.2d at 724. The record here does not reflect that a breakdown in communication occurred. Pendley did voice concerns about the frequency of his communication with his attorneys and disagreement between them, however neither he nor his attorneys indicated to the court that communication between them had broken down.

Pendley's primary concern appears to be based on his counsels' decision not to interview particular witnesses.[1] This is well within an attorney's authority, as case law is clear that trial strategy rests with trial counsel. Id. at 733-36; Thompson, 169 Wn. App. at 459-60; State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967). Pendley had two appointed attorneys working on his case who interviewed dozens of witnesses as they planned and developed the defense and advised the court

---

[1] Though Pendley complained early on of not having a psychological evaluation, one was eventually conducted in preparation for trial.

that they were ready to represent him at trial, which was estimated to last over a month.  Just a few days before the scheduled start date, the parties were provided a brief continuance to explore plea negotiations initiated by Pendley.

Pendley chose to plead guilty and several points within the colloquy with the court reflect his confirmation of appropriate representation by his court-appointed attorneys:

> [PROSECUTOR]: Do you feel this morning that you've had enough time to go over this paperwork with your lawyers?
> [PENDLEY]: Absolutely.
> [PROSECUTOR]: Okay. When you had questions about it, which you most certainly did, were they able to answer those questions?
> [PENDLEY]: Yes, ma'am.
> . . . .
> THE COURT: All right. Thank you very much. Mr. Pendley, have you had all the time and opportunity that you need to be comfortable in making this decision?
> [PENDLEY]: Absolutely, your Honor.
> The Court: Okay. Have your lawyers been able to answer all your questions for you?
> [PENDLEY]: Yes, they have.

The first factor does not weigh in Pendley's favor since his main complaints of a conflict centered around counsel's tactical choices on how to proceed at trial, which is properly within counsel's discretion.  While disagreement as to trial strategy can be exceedingly challenging for both defendant and appointed counsel, standing alone it does not rise to the level necessitating discharge of counsel.  The Supreme Court has indicated that this factor carries great weight in our analysis and is key to determining whether the reviewing court reaches the other two factors. Stenson, 142 Wn.2d at 731.  In Stenson, the court expressly found that the extent of the conflict raised was not great nor was the breakdown in

- 7 -

communication severe and therefore, proceeded with a fairly cursory examination of the remaining steps of the Moore test. Following that model from Stenson, while we find the first factor is dispositive here, for the sake of completeness, we will briefly review the second and third factors.

The second factor, adequacy of the trial court's inquiry into Pendley's concerns about the breakdown in communication, does not weigh in his favor either. Three separate hearings were held on Pendley's motions to discharge counsel. At each, he raised the same concerns regarding trial strategy. In each instance, the court attempted to clearly inform Pendley that such decisions were within his counsels' role. Further, since the charges were very serious and the case was expected to proceed to trial, the court was consistently informed as to the status of preparations by both the State and defense.

The record is clear that the trial court was closely supervising the progress of the case. In addition to focused hearings on Pendley's motions, his concerns and complaints were sometimes raised at regular status hearings. However, Pendley's most urgent and consistent complaint was his right to a speedy trial, which he does not raise now on appeal. When Pendley asserted the conflict with counsel, the trial court engaged in appropriate inquiry and asked him to communicate his concerns. Pendley did so numerous times, however the trial court determined those concerns did not necessitate the discharge of counsel. Case law is clear that this determination rests squarely within the discretion of the trial court. Thompson, 169 Wn. App. at 457. This factor does not weigh in favor of Pendley's claim.

As to the final factor, the timeliness of Pendley's claims, the parties agree that he raised the issue before the court early in the proceedings. The record suggests that Pendley's concerns over any conflict had resolved prior to the request for recess days before trial. Even during the earlier phase of his case when Pendley was regularly writing to the court and filing motions, he never provided the court with a meritorious reason for the trial court to discharge counsel. As such, the trial court did not abuse its discretion in denying Pendley's motions on that matter.

III.    Motion to Proceed Pro Se

Pendley argues that the court failed to rule on his motion to conduct his own defense as another basis for withdrawal of his guilty plea. Pendley's request was equivocal and, therefore, we find no error in the absence of a ruling on the motion.

An individual accused of a crime has a constitutional right to waive assistance of counsel. U.S. Const. amend. VI; Wash. Const. art I, § 22. We focus on Pendley's right under our state's constitution as it provides greater protection than the federal constitution as to an individual's right to represent themselves. State v. Silva, 107 Wn. App. 605, 27 P.3d 663 (2001). However, "[t]o protect defendants from making capricious waivers of counsel and to protect trial courts from manipulative vacillations by defendants regarding representation, the defendant's request to proceed pro se must be unequivocal." Stenson, 132 Wn.2d at 740. The right to proceed pro se is not absolute or self-executing. State v. Woods, 143 Wn.2d 561, 586, 23 P.3d 1046 (2001). "[A] criminal defendant's request to proceed pro se must be (1) timely made and (2) stated unequivocally."

Id. In looking to see if the request was unequivocal, we examine the record as a whole to provide context. Id. We review this issue for abuse of discretion. State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). We review the record "keeping in mind the presumption against the effective waiver of right to counsel." In re Det. Of Turay, 139 Wn.2d 379, 396, 986 P.2d 790 (1999).

Pendley argues his written motion filed on March 6, 2017 was his unequivocal request to proceed pro se. We disagree. The requested relief states, "I am seeking relief by being appointed as co-counsel to activley [sic] participate in preparing my defense with the assistance of my attornies [sic]." The conclusion then specifically states, "[i]t would be in the best interest of justice to allow the defendant to proceed as co[-]counsel in his defense from this point on." The majority of the motion's contents focus on the same issues addressed in Section I above; disagreement or displeasure with his attorneys' strategy, particularly regarding witnesses.

Pendley opened his motion with a request for a hearing to "discuss defendant[']s rights to exercise his constitutional right to act as his own co[-]counsel in his own defense or to conduct his own defense." (Emphasis added). This is the only reference to pro se representation in the motion, as opposed to repeated references to serving as co-counsel, and it is offered in the alternative. There is no right to hybrid representation. State v. Hightower, 36 Wn. App. 536, 540-41, 676 P.2d 1016 (1984). While it is abundantly clear that Pendley wanted a greater degree of control over strategic defense decisions, any request from him

to proceed pro se was equivocal. The trial court did not abuse its discretion in denying Pendley's request for hybrid representation.

IV.    Ineffective Assistance of Counsel

Pendley next argues that he received ineffective assistance of counsel based on conduct relating to the sentencing phase of his case. Specifically, he challenges trial counsel's failure to secure funding for an expert to testify on his behalf at sentencing and failure to advise the court that the conduct underlying one of his convictions used in calculating his offender score occurred when he was a juvenile. The right to counsel is constitutionally guaranteed at all critical stages of a criminal proceeding, including sentencing. State v. Rupe, 108 Wn.2d 734, 741, 743 P.2d 210 (1987).

"To prevail on a claim of ineffective assistance of counsel, [a defendant] must establish both deficient performance and prejudice." State v. Jones, 183 Wn.2d 327, 330, 352 P.3d 776 (2015). For Pendley to succeed with his challenge, he must show that his counsels' representation fell below an "objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Wash., 466 U.S. 668, 688, 694, 80 L. Ed. 2d. 674 (1984). "Courts engage in a strong presumption counsel's representation was effective." State v. McFarland, 127 Wn.2d. 322, 335, 899 P.2d 1251 (1995). We examine the entire record in evaluating counsels' performance. State v. Ciskie, 110 Wn.2d 263, 284, 751 P.2d 1165 (1988); Jones, 183 Wn.2d at 331.

Pendley's first claim of ineffective assistance was that his attorneys failed to secure funding for defense expert, Dr. Deutsch, to provide live testimony at his sentencing. Pendley argues that Dr. Deutsch's testimony was key to his request for a low-end sentence. However, Pendley was unable to clearly articulate, both at the hearing on the continuance motion and on appeal, what that live testimony would provide to the court that wasn't already available through the written report which had been submitted to the court. When this question was specifically asked, Pendley's attorneys' only answer was that the live testimony was necessary to rebut any challenges to the report by the State and to provide other details as to the conclusions contained in the report.

The record demonstrates that the court was in possession of this report at the time of the continuance motion and reviewed it again prior to the sentencing hearing. The State offered to provide the entire transcript of their interview with Dr. Deutsch, however there is no indication this document was submitted, or relied on, at sentencing.[2] It is also noteworthy that defense counsel made no effort to begin the process of securing funding, or even confirming Dr. Deutsch's availability for testimony, between the time when the lapse was identified and the hearing on the motion was held. Perhaps more telling, however, was the second basis defense counsel offered for the motion to continue sentencing; Pendley's desire to get married prior to going to prison.

---

[2] This further undercuts Pendley's argument that live testimony from Dr. Deutsch was necessary to rebut the State's possible challenges to the report, as counsel focused this portion of the argument on the belief that such attacks would be based on the State's interview.

Counsel secured the expert for purposes of conducting an evaluation and preparing a written report which was submitted to the court prior to sentencing. Counsel was unable to articulate a compelling need for live testimony such that a continuance would have been appropriate, given the information contained in the written report. While Pendley's counsel properly accepted responsibility for their lapse, we do not find prejudice based on the lack of live expert testimony. Considering the record as a whole and in light of the strong presumption that counsel was effective, Pendley's claim of ineffective assistance here fails.

Pendley's second argument that his counsel was ineffective is based on failure to advise the court that the conduct underlying one of Pendley's prior felony convictions occurred roughly four months before his 18th birthday, when he was still 17 years old. While Pendley was a juvenile at the time the crime was committed, the felony was filed in superior court after he reached the age of majority and he was convicted and sentenced as an adult. Washington courts have established that there is potentially reduced culpability when a person commits a crime as a juvenile, even if sentenced in adult court. See State v. Houston-Sconiers,188 Wn.2d 1, 391 P.3d 409 (2017).

Here, counsel failed to bring this potentially mitigating information to the attention of the sentencing court. The written plea agreement contained in the record did not include a joint sentencing recommendation, and the parties were prepared to argue their respective recommendations at a contested hearing. However, the plea agreement signed by Pendley and his counsel did agree to the criminal history and sentencing ranges included as attachments and filed with the

court. These documents included the offense at issue in this claim of ineffective assistance, which was properly listed as an adult felony as it was filed, and Pendley later entered a guilty plea, after he turned 18. The record makes clear that all parties agreed that this conviction should properly be scored as an adult felony.

While the information on youthfulness underlying the conviction at question was not provided to the court, the defense appears to agree that the conviction itself was properly included in Pendley's offender score. However, in the context of a contested sentencing hearing, it is difficult to identify a tactical or strategic reason for such an omission. For purposes of our analysis here, we will assume without so deciding that such performance was deficient and turn to the question of prejudice. The record at sentencing included statements from Pendley's relative detailing his challenging upbringing and childhood trauma. It also included Dr. Deutsch's report, which discussed Pendley's historical information—including traumatic events, substance use and hospitalizations for mental health issues, as well as a clinical analysis of Pendley's self-defense claim. Defense counsel also submitted a presentence report with attached exhibits that was provided to the State and court prior to the hearing.

The State sought a high end sentence of 325 months for Pendley. The court imposed a sentence of 250 months; 25 months higher than the low end sentence sought by his attorneys. Pendley's argument here is essentially that counsel's failure to alert the court to the fact that criminal conduct underlying one of his prior adult felony convictions occurred shortly before his 18th birthday renders it less culpable, such that the court would have imposed the 225 month sentence

recommended by his attorneys. The court acknowledged Pendley's challenging upbringing, specifically regarding his youth, when it imposed the sentence. The court also focused on the facts of the case, noting that they neither warranted a high end or a low end sentence, providing insight into how the court arrived at the 225 months it imposed. In light of the wealth of information considered by the sentencing court and its articulated bases for the 250 month sentence, we do not find a reasonable probability that the performance prejudiced Pendley.

V.    DNA Collection Fee

Pendley's final challenge is that the sentencing court improperly imposed a $100 DNA collection fee as part of his judgment and sentence. The State concedes this was improper as a sample had previously been provided pursuant to one of Pendley's older felony conviction. As such, we order the DNA collection fee stricken from his judgment and sentence.

Affirmed in part, reversed in part.

WE CONCUR: