IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83816-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| JOZUA HFVAK, | |
| Appellant. | UNPUBLISHED OPINION |

CHUNG, J. — Jozua Hfvak[1] was convicted of violating community custody. Hfvak claims the court violated his constitutional right to self-representation at trial. Hfvak also requests relief from the Victim Penalty Assessment (VPA) imposed as part of his sentence because he was indigent at sentencing.

We determine the court below did not err in declining to allow Hfvak to resume proceeding pro se at trial, and, therefore, we affirm his conviction. Because newly enacted legislation allows courts to waive the VPA upon a finding that the defendant is indigent, we remand for the trial court to consider his motion to strike the VPA from his sentence.

---

[1] Hfvak is also known as Jon Major.

FACTS

In 2018, Jozua Hfvak was convicted in King County of commercial sex abuse of a minor and possession of depictions of a minor engaged in sexually explicit conduct. His sentence included a 36-month term of community custody for the first count and a 31-month term for the second count, and he was ordered to wear a monitoring device. In May 2021, after being released from Monroe Correctional Complex, where he was serving a sanction for violating the terms of his community custody, he was fitted with an ankle monitor and ordered to remain inside the city limits of Everett. Hfvak cut off his ankle monitor and was subsequently arrested outside of Snohomish County.

At his arraignment in July 2021 for violating community custody, Hfvak moved to represent himself. In support, he cited Criminal Rule 4.1(d) and asked to "waive my right to counsel for the purposes of arraignment and pretrial proceedings and then later reclaim the right to counsel at trial." The court emphasized to him "that there are cases in which, based on the timing, courts have declined to appoint representation based on the period of the case in which representation was requested." Hfvak answered that "it's possible this case could be resolved pretrial," but he also requested standby counsel in case it did proceed to trial. The court conducted a colloquy and found Hfvak to have knowingly and voluntarily waived his right to counsel. It appointed "standby counsel," and Hfvak was detained pending trial.

Later that month, Hfvak moved pro se to continue his trial, claiming police and prosecutors "framed" him for his 2018 conviction, an argument he also

raised in a personal restraint petition that was, at the time, pending before this court.[2] In Hfvak's view, had "the police and prosecutors not hoodwinked the trial court and jury to have caused his conviction, . . . he would have not and could not have committed the offense charged[.]" Thus, he would offer a defense of entrapment to his current charge for violating community custody. The trial court granted the continuance.

In November 2021, Hfvak moved pro se on the same grounds for a stay of proceedings, but the court denied his motion. Later that month, appearing before a different judge pro se, he brought another motion for a stay on the same basis. That judge also denied the stay but granted a continuance of the trial until January 2022.

In December 2021, a different judge held a hearing on several motions Hfvak brought pro se, including a motion to strike the hearings because he had been unable to adequately prepare the motions he had noted for hearing. The court stated to Hfvak, "[Y]ou've taken an extraordinary amount of judicial time and prosecutor time filing repetitive motions that then you then [sic] strike." The court ultimately granted Hfvak's motion to continue the trial, over the State's objection, so that it could hear his motion to dismiss as a discovery sanction, which was dispositive.

In January 2022, the court heard Hfvak's motion to dismiss, which it denied. At the end of this hearing, Hfvak asked the court, "And at this time, Your

---

[2] In re Pers. Restraint of Jon Major, aka, Jozua Hfvak, No. 81210-6-I (Wash. Ct. App. Sept. 27, 2021).

Honor, would the [c]ourt address my pro se status?" He explained that "issues at jail" made it impossible for him to prepare motions from there. The court asked Hfvak to prepare a proper motion to be heard at a later date.

The following week, acting pro se, Hfvak filed two motions to dismiss. He also filed a motion to shorten time arguing that, if his motions to dismiss were not granted, then he would invoke his right to counsel and a sixty-day trial continuance would be required. At trial call on January 14, the court asked Hfvak if he now wanted his previously designated standby counsel to represent him. He answered, "Not at this point, Your Honor." The court assigned the case to a trial judge, with motions in limine to be heard that afternoon.

That afternoon, the court first heard and dismissed Hfvak's two motions to dismiss. Hfvak explained he was not ready and "can't prepare for motions in limine, . . . so I'm going to invoke my right to counsel at this point. And I'm requesting that the [c]ourt terminate my pro se status and allow standby counsel to represent me at the trial." The court then conducted a colloquy with Hfvak, asking specifically, "[I]s it your desire at this time, unequivocally, okay, that you wish to be represented by [counsel]?" Hfvak answered, "Yes." The court followed up, asking if he understood that "[counsel] will be conducting the trial strategy and tactics of the trial with you?" and "I'll be looking to her decisions, of course, after consultation, for the final position of the defense; you understand that?" Hfvak answered "Yes" to both questions. He then raised the issue of his being unable to adequately present his defense because "that evolves around me being able to write," to which the court answered "we've dealt with that issue. . . .

4

There's no reason for you to . . . further inform me about that issue, because we're getting to a point – Ms. Forbes is your attorney." The court then set a hearing for the motions in limine for the following week and granted a continuance of the trial.

The next week, Hfvak twice refused to appear in court. He also attempted to waive his presence at trial. The State requested a drag order requiring Hfvak to appear, to address his waiver of presence and "make sure that waiver is unequivocal." Noting it had no way "to determine if th[e] waiver is real and unequivocal" given Hfvak's absence, the court declined to sign the drag order, reserving the issue for trial call.

At a hearing on January 26, the State moved for and the court granted a trial continuance until February 2022. At that same hearing, defense counsel presented a written motion to waive Hfvak's presence at trial, attaching Hfvak's affidavit. The court denied the motion. Hfvak then spoke. He said, "Your Honor, I invoke my right - - or I reinvoke my right to self-representation and ask that the [c]ourt - -" The court interrupted him and said, "You have an attorney, sir. We're going to use that attorney. Thank you." Thereafter, the court adjourned for the day.

In February, Hfvak was absent from trial call. The court issued a drag order for the following week. The following week, Hfvak was initially absent from trial call. He was subsequently restrained and transported to court for trial

beginning that afternoon.[3]

Counsel represented Hfvak throughout his four-day trial. The jury convicted him as charged. After the jury was excused, Hfvak asserted, then withdrew, a request to return to pro se status because he and counsel "just realized . . . it would be more expedient . . . for [counsel] to file a motion to arrest the judgment" before he moved for reconsideration based on not being able to represent himself at trial.

At sentencing, in March 2022, counsel filed a motion to arrest judgment. As counsel prepared to argue the motion, Hfvak asked the court "to address his pro se status." The court clarified whether, "in the middle of a motion that's been filed by your attorney," he wanted the court to consider allowing him to proceed pro se. Hfvak answered yes, but the court said it was "not going to do that." Counsel's motion was denied. Later in the hearing, the court asked Hfvak if he would like to say anything before he was sentenced. Hfvak then made an oral motion to stay the judgment. He added to the record inmate grievance forms and exhibits that he argued showed he was hindered from conducting his own defense, pro se, at trial.

The court sentenced Hfvak to time served. It imposed on him a $500 VPA. At the same hearing, the court granted his indigency motion. Hfvak timely appealed.

---

[3] Hfvak became threatening and violent. The morning of trial he filled a milk carton with his own fecal matter to throw on jail staff.

After briefing on appeal was completed, the Governor signed ENGROSSED SUBSTITUTE HOUSE BILL (ESHB) 1169 into law, amending RCW 7.68.035, which had required courts to impose a $500 VPA on any person convicted of a felony or gross misdemeanor. LAWS OF 2023, ch. 449. ESHB 1169 provides that a court shall not impose the VPA if the defendant is found indigent at the time of sentencing, and also allows courts to waive a VPA imposed prior to the effective date upon motion by the defendant. Based on this new legislation, Hfvak moved this court to strike the VPA the trial court imposed on him.

ANALYSIS

I.      Right to Self-Representation

Hfvak alleges the trial court erred by violating his right to self-representation. Hfvak argues that when the court did not engage him in a colloquy on January 26—the third of six times he reinvoked his right to self-representation—the court abused its discretion because "[n]ot only did the court not conduct the necessary colloquy, the court did not even let Hfvak finish his sentence." Hfvak argues his reinvocation was unequivocal and timely and that prejudice is presumed.

The State argues Hfvak's request was equivocal because the entirety of proceedings shows Hfvak's request on January 26 was "manipulative vacillation" and that he subsequently abandoned the request. We agree with the State.

"Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution." State v. Burns, 193 Wn.2d 190, 201-02, 438 P.3d

7

1183 (2019) (internal quotation omitted); WASH. CONST. art. I, § 22 ("the accused shall have the right to appear and defend in person"); Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). "The unjustified denial of this [fundamental] right requires reversal." Burns, 193 Wn.2d at 202 (quoting State v. Stenson, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997)).

However, the right to proceed pro se is neither absolute nor self-executing. State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). When a defendant requests pro se status, the trial court must first determine whether the request is unequivocal and timely. Id. Absent a finding that the request was equivocal or untimely, the court must then determine if the defendant's request is voluntary, knowing, and intelligent, usually by colloquy. Id. But a finding or an oral proclamation is not required if the record reflects that the court applied the correct legal standard. State v. Curry, 191 Wn.2d 475, 491, 423 P.3d 179 (2018) (citing State v. DeWeese, 117 Wn.2d 369, 378, 816 P.2d 1 (1991) ("A colloquy on the record is the preferred method . . . .")).

Washington has adopted "the Ninth Circuit's articulation: an unequivocal request to proceed pro se requires a defendant to 'make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.' " Curry, 191 Wn.2d at 490 (quoting United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994)). A trial court must make these determinations on a case-by-case basis, taking into consideration the circumstances of each request. Id.

8

Additionally, there is "no Sixth Amendment right to 'hybrid representation' through which defendants may serve as co-counsel with their attorneys." DeWeese, 117 Wn.2d at 379; see also State v. Hightower, 36 Wn. App. 536, 540-42, 676 P.2d 1016 (1984), review denied, 101 Wn.2d 1013 (1984) (discussing why such motions are not favored). Nor may a defendant manipulate the right to counsel for the purpose of delaying and disrupting trial. DeWeese, 117 Wn.2d at 379 (citing State v. Johnson, 33 Wn. App. 15, 22, 651 P.2d 247 (1982), review denied, 99 Wn.2d 1001 (1983)). "To protect defendants from making capricious waivers of counsel and to protect trial courts from manipulative vacillations by defendants regarding representation, the defendant's request to proceed pro se must be unequivocal." Stenson, 132 Wn.2d at 740; DeWeese, 117 Wn.2d at 376 (same). "Once an unequivocal waiver of counsel has been made, the defendant may not later demand the assistance of counsel as a matter of right since reappointment is wholly within the discretion of the trial court." Id. at 376.

An appellate court reviews the denial of a defendant's request to proceed pro se for abuse of discretion. Burns, 193 Wn.2d at 202. A trial court abuses its discretion if the decision is manifestly unreasonable such that no reasonable mind could come to that decision, if the decision is not supported by the facts, or if the judge applied an incorrect legal standard. Id. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision, "even if [it] may have reached a different conclusion on de novo review." Id. (quoting Curry, 191 Wn.2d at 486). The reviewing court

give[s] great deference to the trial court's discretion because the trial court is in a favorable position [compared] to the appellate courts in evaluating a request to proceed pro se. Trial judges have more experience with evaluating requests to proceed pro se and have the benefit of observing the behavior, intonation, and characteristics of the defendant during a request.

Id. (citing Curry, 191 Wn.2d at 485).

Here, it is undisputed that at his arraignment, Hfvak timely and unequivocally requested self-representation, was colloquied by the court, and was granted the right to proceed pro se. But Hfvak argues that after he subsequently requested and was granted counsel because of his inability to access writing materials, the court erred by denying his later motion to return to self-representation without a colloquy. But no colloquy is necessary if a motion is equivocal. Madsen, 168 Wn.2d at 504.

Hfvak argues his request was unequivocal because "[h]e simply re-invoked his right to self-representation." But the question here is whether, on the third occasion *after* he was granted pro se status, *after* Hfvak had terminated that status, and *after* he agreed to be represented by counsel, the court was required to colloquy him again when he attempted to reinvoke his right to proceed pro se. Hfvak argues that the court could not implicitly find him equivocal because the court did not enter a written order, he did not present a written motion, and there was no extensive colloquy, citing Curry, 191 Wn.2d at 491-92. But no finding or oral proclamation is necessary if the record reflects the court applied the correct legal standard. Curry, 191 Wn.2d at 491.

Here, the court colloquied Hfvak specifically about whether his request was equivocal when he terminated his pro se status on January 14. It asked him,

"[I]s it your desire at this time, unequivocally, okay, that you wish to be represented by [counsel]?" Hfvak answered yes. The court ask him if he understood that "[counsel] will be conducting the trial strategy and tactics of the trial with you?" He again answered yes. Thus, when he appeared in court on January 14, Hfvak "ma[d]e an explicit choice between exercising the right to counsel and the right to self-representation." Curry, 191 Wn.2d at 490.

When determining equivocality, a defendant's subsequent actions are a relevant factor. Id. at 489. Further, equivocality is determined on a case-by-case basis in part to protect trial courts from "manipulative vacillations." DeWeese, 117 Wn.2d at 376. The record in this case, particularly the January 26 hearing, shows Hfvak's manipulative vacillation. Having unequivocally stated that he wished to be represented by counsel on January 14, he then provided an affidavit for his counsel's motion to waive his presence at trial. And it was during the argument of that waiver motion that he requested to reinvoke his right to proceed pro se. Not only is there no Sixth Amendment right to hybrid representation, Hightower, 36 Wn. App. at 540-41, but his dual requests were inconsistent and, therefore, equivocal; had the court waived his presence at trial *and* granted his motion to proceed to pro se, Hfvak would have entirely lacked representation at trial. A decision about a request for hybrid representation is within the sound discretion of the trial judge in order to control the conduct of a trial, maintain its dignity and decorum, and prevent disruption owing to a defendant's "inept or disorderly self-representation." Id. at 542.

11

The trial court acted within its discretion when it declined at the January 26 hearing to engage Hfvak in a colloquy because he had already vacillated between requesting counsel and requesting to proceed pro se, and he had previously unequivocally requested counsel. The record shows the court applied the correct legal standard and, having reasonably determined Hfvak's request was equivocal, it declined to engage Hfvak in a colloquy. Therefore, its decision did not constitute error.

II.      Motion to Strike Victim Penalty Assessment

Hfvak filed a motion requesting this court to order the VPA to be stricken from his judgment and sentence based on ESHB 1169. At the time Hfvak was sentenced, in March 2022, former RCW 7.68.035 (2022) required the sentencing court to impose a mandatory VPA of $500 for a felony or gross misdemeanor. Accordingly, the court did so, and it imposed a payment plan of $10 per month commencing September 1, 2022, to be completed in 10 years.

In 2023, in ESHB 1169, the legislature amended the statute regarding VPAs, stating in relevant part:

> (4) The court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3).
>
> (5) Upon motion by a defendant, the court shall waive any crime victim penalty assessment imposed prior to the effective date of this section if:
>
> ....
>
> (b) The person does not have the ability to pay the penalty assessment. A person does not have the ability to pay if the person is indigent as defined in RCW 10.01.160(3).

12

No. 83816-4-I /13

LAWS OF 2023, ch. 449, § 1. The effective date of these amendments was July 1, 2023.

The State does not object to treating Hfvak's motion as a post-sentencing motion seeking relief under RCW 7.68.035(5)(b).[4] Hfvak is entitled to file this motion with the trial court based on RCW 7.68.035(5)(b).

We affirm Hfvak's conviction and remand for the trial court to consider his motion to strike the VPA imposed as part of his sentence.

_Chung, J._

WE CONCUR:

_Birk, J._  _Smith, C.J._

---

[4] The State objects to this court striking the VPA by prospectively applying RCW 7.68.035(4). Because Hfvak filed a "motion to strike" rather than seek review of the trial court's imposition of the VPA through a supplemental assignment of error, and because he does not provide analysis regarding whether this court should prospectively apply the new law, we decline to address this issue.